IRELL & MANELLA LLP
Jason G. Sheasby (CA SBN 205455)
jsheasby@irell.com
Hong (Annita) Zhong (CA SBN 266924)
hzhong@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NETLIST, INC., | Case No. |
| Plaintiff, | Pending in: The United States District Court for the Eastern District of Texas, Marshall Division No. 2:21-cv-463-JRG |
| v. | Hearing Date: January 25, 2023 |
| MONTAGE TECHNOLOGY, INC. AND MONTAGE TECHNOLOGY CO., LTD., | Time:  10:00 AM PT |
| Defendant. | Location: Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, Room 2112, San Jose, CA 95113 |

**PLAINTIFF NETLIST, INC.'S MOTION TO COMPEL COMPLIANCE OF SUBPOENA BY MONTAGE TECHNOLOGY, INC. AND MONTAGE TECHNOLOGY CO., LTD.**

**NOTICE OF MOTION**

To all parties and their attorneys of record:

In accordance with N.D. Cal. Civil Local Rule 7-2(a), Netlist notices this motion on January 25, 2023 at 10:00 AM PT, or as soon thereafter as the matter may be heard, at the San Jose Division of the Northern District of California Court at the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, Room 2112, San Jose, CA 95113, or remotely should the Court so order, Plaintiff Netlist, Inc. ("Plaintiff" or "Netlist") will and hereby does move for an order compelling Montage Technology, Inc. ("Montage CA") and Montage Technology Co., Ltd. ("Montage Shanghai" and collectively "Montage") to comply with the subpoenas for deposition and document production.

The grounds for this Motion are set forth in the accompanying Memorandum of Points and Authorities below, the Declaration of Hong Annita Zhong and exhibits attached thereto, all documents in this Court's file, and such other written or oral argument as may be presented at or before the time this Motion is heard by the Court.

**STATEMENT OF RELIEF REQUESTED**

Netlist seeks an order holding that Montage should provide a witness to testify as to the questions listed in Netlist's Exhibit 24 ("Question List").

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Montage Shanghai has been properly served through its U.S. subsidiary and should be compelled to comply with Netlist's narrowly tailored subpoena for deposition and production of documents relevant to the operation of Samsung's accused infringing products.

2.      Whether Montage CA has possession, custody, or control of relevant information and should be compelled to provide a witness to testify as to the operation of Montage's memory components supplied to Samsung, the accused infringer in the underlying patent infringement action, and to produce the relevant documents requested in Netlist's subpoenas.

**CERTIFICATION**

Pursuant to Paragraph 4 of the Court's Standing Order, counsel for Netlist certifies that it met and conferred with counsel for Montage Technology, Inc. and Montage Technology Co., Ltd.

1  on December 16, 2022 in a good-faith effort to resolve the issues raised in this motion.  However,

2  the parties cannot reach an agreement.

3

4  Dated: December 21, 2022                 Respectfully submitted,

5                                           IRELL & MANELLA LLP

6                                           By: */s/  Hong Zhong*

7                                               Jason G. Sheasby
8                                               jsheasby@irell.com
                                                Hong (Annita) Zhong
9                                               hzhong@irell.com
                                                IRELL & MANELLA LLP
10                                              1800 Avenue of the Stars, Suite 900
                                                Los Angeles, California 90067
11                                              Telephone: (310) 277-1010
                                                Facsimile: (310) 203-7199
12

13                                          *Attorneys for Plaintiff Netlist, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................1

I.      INTRODUCTION ...................................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................................2

    A.     The EDTX Action ......................................................................................................2

    B.     Netlist's Subpoenas on Montage Entities...................................................................4

    C.     Montage Improperly Resisted Discovery by Asserting that Only the
        Parent Company Located in China Has Possession of the Relevant
        Information ...................................................................................................................6

    D.     Netlist Further Narrowed the Scope of Its Requests ..................................................8

III.    ARGUMENT ...........................................................................................................................8

    A.     Netlist's Subpoena Seeks Targeted Information Relevant to the
        Underlying Infringement Action ................................................................................8

    B.     Montage Shanghai Should Be Compelled to Comply with Netlist's
        Deposition and Document Production Subpoenas .....................................................9

        1.     Netlist Properly Served Montage through Its U.S. General
            Manager...........................................................................................................9

        2.     This Court Has Personal Jurisdiction to Enforce Netlist's
            Subpoenas......................................................................................................12

        3.     Netlist's Subpoena Provides Appropriate Place of
            Compliance....................................................................................................16

    C.     Montage CA Should Be Compelled to Comply with Netlist's
        Deposition and Document Production Subpoenas ...................................................17

IV.     CONCLUSION ......................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Better Care Plastic Tech. Co. v. Gredale, LLC*,
   No. 21-cv-216, 2022 WL 2046206 (C.D. Cal. Mar. 4, 2022).....................................................18

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ...................................................................................................................14

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999)...................................................................................................17

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020) .....................................................................................15

*City of Roseville Employees' Ret. Sys. v. Apple, Inc.*,
   2021 WL 1176641 (N.D. Cal. 2021).................................................................................. *passim*

*Cosper v. Smith & Wesson Arms Co.*,
   53 Cal. 2d 77 (1959)..................................................................................................................10

*Falco v. Nissan N. Am. Inc.*,
   96 F. Supp. 3d 1053 (N.D. Cal. 2015) .....................................................................................13

*Fed. Trade Comm'n v. Donor Rels., LLC*,
   No. 2:18-cv-183, 2018 WL 10467641 (D. Nev. Feb. 16, 2018)...............................................12

*In re German Auto. Mfr. Antitrust Litig.*,
   392 F. Supp. 3d 1059 (N.D. Cal. 2019) ...................................................................................13

*Halo Elecs. Inc. v. Bel Fuse Inc.*,
   2010 WL 2605195 (N.D. Cal., June 28, 2010) .........................................................................11

*Hatami v. Kia Motors Am., Inc.*,
   No. 08-cv-226, 2008 WL 4748233 (C.D. Cal. Oct. 29, 2008)...................................................10

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945)...................................................................................................................13

*Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*,
   578 F. Supp. 2d 1224 (C.D. Cal. 2008).............................................................................12, 16

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011)...................................................................................................12

*U.S.ex rel. Miller v. Pub. Warehousing Co. KSC*,
   636 F. App'x 947 (9th Cir. 2016)..............................................................................................10

**Page**

*NetApp, Inc. v. Nimble Storage, Inc.*,
    2015 WL 400251 (N.D. Cal. Jan. 29, 2015) .......................................................................15, 16

*QC Labs v. Green Leaf Lab, LLC*,
    No. 18-cv-1451, 2019 WL 6797250 (C.D. Cal. July 19, 2019) ................................................18

*Resh, Inc. v. Skimlite Mfg. Inc.*,
    No. 22-cv-1427, 2022 WL 16935625 (N.D. Cal. Nov. 14, 2022) .............................................8

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)..................................................................................................12

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ...............................................................................14, 16

*In re Subpoena to Apple Inc.*,
    No. 13-cv-254, 2014 WL 2798863 (N.D. Cal. June 19, 2014) ...................................................8

*In re: Subpoena to Third Party Sentieon, Inc.*,
    2022 WL 17477092 (N.D. Cal. Dec. 6, 2022) ..............................................................8, 14, 15

*United States v. Toyota Motor Corp.*,
    561 F. Supp. 354 (C.D. Cal. 1983)..........................................................................................16

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988) ................................................................................................................9

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
    715 F.3d 716 (9th Cir. 2013).....................................................................................................13

**Statutes**

Cal. Corp. Code § 2110.................................................................................................................10

**Rules**

Fed. R. Civ. P. 4 ............................................................................................................................9

Fed. R. Civ. P. 45 ................................................................................................................ *passim*

Rule 26(a).......................................................................................................................................2

Rule 26(b).......................................................................................................................................8

Rule 26(d).......................................................................................................................................8

1

**Page**

**Other Authorities**

https://www.montage-tech.com/Social_Recruitment...........................................................................15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

This subpoena-enforcement action arises from an underlying patent infringement lawsuit between Plaintiff Netlist, Inc. ("Netlist") and Defendants Samsung Electronics Co, Ltd., Samsung Electronics America, and Samsung Semiconductor, Inc. (collectively "Samsung").  Ex. 1 (docket sheet for EDTX Action).  Specifically, Netlist asserted that Samsung's DDR4 LRDIMMs, DDR5 DIMMs, and HBM memory products infringed Netlist's U.S. Patent Nos. 10,860,506 ("the '506 Patent"), 10,949,339 ("the '339 Patent"), 11,016,918 ("the '918 Patent"), 11,232,054 ("the '054 Patent"), 8,787,060 ("the '060 Patent"), and 9,318,160 ("the '160 Patent").

Montage Technology, Inc. ("Montage CA") and Montage Technology Co., Ltd. ("Montage Shanghai" and collectively "Montage") are suppliers of key components of Samsung's accused DDR4 and DDR5 products, including at least data buffers and registering clock drivers ("RCD"), (collectively, the "Key Components").  Netlist's patent claims asserted in the EDTX Action recite specific limitations directed at the structure, function, and operation of these key components.  As one example, element 1c of U.S. Pat. No. 10,949,339 ("the '339 patent) is directed to functions within RCDs of accused LRDIMMs, and elements 1e-1f recite specific structures and functions within the data buffer circuitry. *See* Ex. 2 at 4 (Netlist's claim list).  Similarly, elements 1h-1l of the '506 patent recite specific functions within the data buffer circuitry; and the asserted claims of the '918 and '054 patents recite limitations directed to the voltage conversion circuitry and voltage monitoring circuitry within the PMICs.  *See* Ex. 2 at 12–13 (claim 5 of the '918 patent); *id.* at 16 (claim 1b of the '054 patent).

Samsung has repeatedly represented to Netlist that technical information related to DDR4 and DDR5 products, which is needed to confirm critical operation information of Samsung's accused infringing products and components thereof, is solely within the possession of third parties, including Montage.  *See, e.g.* Ex. 24 at 2 (Samsung counsel July 8, 2022 Email) ("[F]or the DDR4 and DDR5 products, nearly all the relevant code is in the possession of third parties, and Samsung does not have access to the code.").  Thus, Netlist served subpoenas for document production and

deposition on Montage CA and Montage, Inc. ("Montage TX"), seeking targeted information relating to the operation and structure of the Key Components incorporated in Samsung's accused products.  Exs. 3, 4 (2022-07-14 production subpoenas to Montage CA and Montage TX); Exs. 5, 6 (2022-08-17 depo subpoenas to Montage CA and Montage TX); Exs. 7, 8 (2022-08-31 corrected subpoenas to Montage TX).

Montage CA and Montage TX refused to produce source code materials in response to Netlist's subpoenas, arguing that such materials are not within its possession, and are only available from the parent company, Montage Shanghai.

On August 31, Netlist served additional subpoenas on Montage Shanghai through its U.S. subsidiary, Montage CA, which acts as a general manager for Montage Shanghai.  Ex. 9-10 (2022-10-05 subpoenas).  Montage Shanghai disputed the effectiveness of the service of Netlist's subpoenas and refused to provide any written responses or produce relevant documents.

Because documents showing the operation of Montage Key Components are critical to Netlist's patent infringement action, an order compelling compliance by Montage is necessary.

## II.	FACTUAL BACKGROUND

### A.	The EDTX Action

Netlist issued the subpoena to Montage and its subsidiaries in connection with the EDTX Action.  Based on information to date, including Samsung's Rule 26(a) disclosures and interrogatory responses, Montage components are at issue for four of the six asserted patents: the '918 patent and the '054 patent, which are asserted against Samsung's DDR5 DIMM products, and the '339 patent and '506 patent, which are asserted against Samsung's DDR4 LRDIMMs.  *See* Ex. 11 ¶¶ 93–96, 106–06 (Netlist's FAC); Ex. 12 (Excerpts of Netlist's Preliminary Infringement Contentions).

Under the existing scheduling order, the parties are to complete fact discovery, serve opening reports, and file motion to compel by December 22, 2022. Ex. 13 (E.D. Tex. docket control order). A claim construction hearing was held on November 4, 2022.  Ex. 1 (Docket sheet). The trial is set for May 1, 2023.  Ex. 13 (E.D. Tex. docket control order).

Netlist has been diligently seeking discovery from Samsung.  The day discovery opened in the EDTX Action, Netlist served a first set of interrogatories and a discovery request letter to Samsung.  Ex. 14 (Netlist's First Set of Interrogatories); Ex. 15 (Netlist's documents production letter).  In particular, Netlist provided Samsung with a detailed list of the categories of documents that Netlist needed in order to analyze the specific features of Samsung's accused infringing products and asked Samsung to produce these documents.  *See* Ex. 15 (listing 165 categories of relevant document productions).[1]  Many of these categories implicate functionality contained in products or components that Samsung obtains from third parties, such as Montage.

In response, Samsung represented to Netlist that it only had about 50 potentially responsive third party documents.  Ex. 40 (Samsung counsel July 20, 2022 Email) ("Samsung intends to produce documents next week for the third party documents in its possession. We can tell you that there are approximately 50 documents that fall into this category.").  Netlist has reviewed those documents, which consist mostly of datasheets that repeat information in JEDEC standards and some simulation files of electrical characteristics not at issue here.  According to Samsung, other than the 50 or so third party documents which Samsung refuses to authenticate, information relevant to the data buffers and registering clock drivers, such as schematics and source code that provide the needed confirmation of how the these components are structured and designed to operate, would only be available through third party discovery.

Indeed, after Netlist repeatedly requested that Samsung provide source code and RTL files regarding various aspects of the accused products, Samsung's counsel stated that nearly all codes relevant to DDR4 and DDR5 products are in the possession of third parties, and Samsung does not have access

---

[1] This letter is consistent with the local practice in the Eastern District of Texas, which requires parties to proactively produce relevant documents, in lieu of serving formal RFPs.  Ex. 16 (EDTX Action Dkt. 40, at 2 & n.1. ("The Court anticipates that this disclosure requirement will obviate the need for requests for production.")).

to the codes.  *See* Zhong Decl. at 1; *see also*  Ex. 17 (2022-07-18 Reardon Email) ("We also point out, as you should be well aware, most of the relevant components implicated by Netlist's contentions are third party components.").

**B.     Netlist's Subpoenas on Montage Entities.**

Based on Samsung's statement, Netlist issued document production subpoenas on Montage CA and Montage TX on July 14, 2022 and August 31, 2022.  Ex. 3-4, 7-8.  Among other things, Netlist's subpoenas (in parallel) requested the following categories of documents relating to the operation and function of Montage Key Components:

No. 1:  Documents showing the identification of Montage Key Components;

No. 2: Documents showing the features, functionality, operation, design and architecture of the Montage Key Component, and its interaction with any other components in Samsung Accused Memory Products

No. 4: Testing, evaluation, simulation, qualification, compatibility study and comparability study in Montage's possession, custody or control concerning Montage Key Components as related to the Subpoena Features

No. 10: Identity of the personnel most knowledgeable about the technical details of each Montage Key Component

No. 15: Documents that can show Montage products (non-)compliance with the JEDEC specifications

Exs. 3, 10.  Netlist sought the deposition of Montage witnesses to testify as to the following topics relating to the operation of Montage Key Components:

No. 1: Authenticity of the Documents and Things created by Montage and produced by Montage, Samsung, or other third parties in this Litigation, including Documents requested in Netlist's subpoena *duces tecum* served to Montage.

No. 3: The structure, function, and operation of Montage Data Buffer as related to DDR4 LRDIMM Write Buffer Timing Control Features and DDR4 LRDIMM Read Buffer Timing Control Features.

No. 4: The structure, function, and operation of Montage RCD as related to the address and command signals it receives and outputs and how the output signals are generated based on the signals it receives.

No. 5: The structure, function, and operation of Montage PMICs as related to the DDR5 PMIC Features.

No. 6: Reasons that Montage implemented the specific structures, functions, and operations in 3–5.

No. 8: Montage's first implementation of each of the structure, function, and operation referenced in 3–5.

No. 9: Competitive advantages of Montage DDR Components, including features that distinguishes Montage DDR Components from those of its competitors. .

No. 16: The compliance and/or noncompliance of Montage DDR Components with JEDEC standards, and any deviations as related to the Subpoena Features.

Ex. 6 (2022-08-17 Depo Subpoena on Montage CA); *see also* Ex. 9.

On August 10, Montage CA produced certain datasheets and sent a letter response noting that the components supplied to Samsung comply with the specifications set by a standard-setting organization, JEDEC.  Ex. 18 (2022-08-11 Bartlett Ltr.).

In response, Netlist explained that the documents Montage CA produced are insufficient to show the operation of Samsung products' accused features:

[REDACTED]

[REDACTED]

Ex. 19 (2022-08-17 Netlist's Discovery Letter); *see also* Ex. 2.

**C.    Montage Improperly Resisted Discovery by Asserting that Only the Parent Company Located in China Has Possession of the Relevant Information**

Montage did not dispute the relevance of these requested documents and information, but stated that Montage TX is not involved in memory products, and Montage CA does not have possession or access to the "missing information." Ex. 20 at 3 (Bartlett 2022-08-29 Ltr).

In light of Montage's representation, Netlist served another set of subpoenas on Montage Shanghai through its subsidiary Montage CA on October 5, 2022.  Exs. 9, 10.  Montage Shanghai, however, refused to provide any substantive response to the subpoena, disputing the sufficiency of service and arguing that Montage Shanghai has no connection with the United States.  Ex. 21 (Oct. 20, 2022 Bartlett Email).

However, Montage CA is a general manager and alter ago of the parent company, Montage Shanghai.  Montage Shanghai controls 100% shares of Montage CA. Ex. 22.  The two companies share key directors: for example, Howard Yang is the CEO for both Montage Shanghai and Montage CA; Stephen Tai is the President of Montage Shanghai and CFO of Montage CA.  Ex. 23; Ex. 39. Howard Yang and Stephen Tai also make up the majority of Montage CA's board of directors. Ex. 39. Montage operates the website for all Montage-related companies and posts job listing and hiring information for positions located in San Jose (i.e. Montage CA's address). Ex. 25.  Montage prepares annual reports for the corporation group incorporating information of Montage CA.  Ex. 26(excerpt of Montage 2021 Annual Report with translation).  Montage CA uses the same trademark as Montage Shanghai and owns the registration for the Montage mark in the United States. Ex. 28 (TM

1   Registration).

2        As Montage Shanghai admitted, the California entity "████████████████████

3   ████████████████████████████████████████████████████████████████████

4   ████████ Ex. 29 (09/08 Letter from Montage); Ex. 20 (08/29 Letter from Montage).

5   ████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████ Ex. 20

7   (Montage 08/29/2022 letter).  Montage CA thus exists as a liaison between Montage Shanghai and

8   its U.S. customers, ██████████████████████████████████████████████████████

9   ████████████████████████████ Ex. 20 (Montage 08/29/2022 letter).   Members of

10  Montage Shanghai and Montage CA regularly exchange "documents pertaining to marketing and

11  pre-sale and post-sale services provided by Montage [CA]." Ex. 30 (Montage 10/12 Ltr).

12       In fact, in Montage's 2021 Annual Report, the company states that it has established various

13  "branches or offices" in United States and Korea with engineers and sales agents located in these

14  branches and local offices:

15      3. Global industry positioning

16      Not only did the Company take root in China but it also established branches or offices in
    the United States and South Korea. It dispatched engineers and salesmen to directly

17  communicate with international giants in the industry, learn the development of the
    industry and the changes and trends towards technologies, undertake the changes in the

18  whole sector, and grasp the changing industry trends and innovation directions, thus
    improving the influence on the global market and efficiency of R&D. Meanwhile,

19  through a global industry positioning, the Company could allocate the resources of the
    entire industry reasonably and leverage the synergy effect, with the operation efficiency

20  enhanced and costs controlled.

21  Ex. 26 at 27 (certified translation of excerpts of Montage's 2021 Annual Report).

22       Further, Montage Shanghai and Montage CA are both part of the broader MT Group.

23  Montage CA is engaged to provide ████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████

*Id.* Thus, Montage Shanghai's insufficient service argument lacks merits. Montage Shanghai has waived other objections to the subpoena and should be compelled to produce all responsive documents Netlist requested.

### D.    Netlist Further Narrowed the Scope of Its Requests

On December 20, 2022, Netlist further narrowed the scope of its discovery requests to specific questions listed in Exhibit 24, which narrowly directed to the operation of Key Components. Montage, however, still refused to provide a witness to testify as to these narrowed topics.

## III.    ARGUMENT

### A.    Netlist's Subpoena Seeks Targeted Information Relevant to the Underlying Infringement Action

Federal Rule of Civil Procedure 45 governs discovery from nonparties through the issuance of subpoenas. Fed. R. Civ. P. 45; advisory committee notes to 2013 amendment. The scope of discovery through a Rule 45 subpoena is governed by Rule 26(d). *See In re: Subpoena to Third Party Sentieon, Inc.*, 2022 WL 17477092 *1 (N.D. Cal. Dec. 6, 2022) ("The scope of allowable discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)"). Netlist can conduct discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(d); *see also Resh, Inc. v. Skimlite Mfg. Inc.*, No. 22-cv-1427, 2022 WL 16935625 *1 (N.D. Cal. Nov. 14, 2022) (quotation omitted). "Once the moving party establishes that the information requested is within the scope of permissible discovery, the burden shifts to the party opposing discovery" to show "that the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails to show need for the information." *In re Subpoena to Apple Inc.*, No. 13-cv-254, 2014 WL 2798863, at *2 (N.D. Cal. June 19, 2014).

As detailed above, Netlist's requested technical information is directly relevant to its infringement claims. For example, Netlist sought information that could show: (1) how Montage implements the logic diagrams, for example, how the signal "WR FIFO RD" or "MDQ_QE" is generated; (2) which input signals are responsible for generating these signals or when exactly those "WR FIFO RD" or "MDQ_QE" signals are asserted or de-asserted to cause the associated tristate

buffers to be enabled and disabled; (3) the exact time period during which the data path is enabled and disabled or that the duration during which the data path is enabled is "in accordance with a latency parameter"; (4) timing and control of the tristate buffers, for example, how much delay is applied to the delay circuit in the logic diagram for the read data strobes or how that amount of delay is programmed or provided to the data buffer; (5) the operation of RCDs such as what signals they receive and how they process such signals to generate the output module control signals. *See supra* 5-6; Ex. 6 (2022-08-18 Netlist's Discovery Ltr to Montage).

Montage does not dispute the relevance of Netlist's requested information. *See* Ex. 20 at 3 (Bartlett 2022-08-29 Ltr) (raising objection solely based on Montage CA's lack of possession of the relevant information).

### B.    Montage Shanghai Should Be Compelled to Comply with Netlist's Deposition and Document Production Subpoenas

Montage Shanghai should be compelled to provide witnesses to attend depositions and to produce responsive documents, including source code materials. As noted above, Montage Shanghai did not provide any objections or response to the subpoena.  Nor has it argued that the documents Netlist seeks are not relevant.  The only objection Montage Shanghai has raised is whether service is proper.  Because Montage Shanghai's service objections are baseless, it should be compelled to comply with Netlist's subpoena.

### 1.    Netlist Properly Served Montage through Its U.S. General Manager

Rule 45 of the Federal Rules of Civil Procedure provides that "[s]erving a subpoena requires delivering a copy to the named person" but does not elaborate on how delivery is to be accomplished. Fed. R. Civ. P. 45(b)(1). Thus, "many courts have looked to Rule 4 of the Federal Rules of Civil Procedure, governing service, to determine the requirements for serving a subpoena on a corporation (whether foreign or domestic) within the United States." *City of Roseville Employees' Ret. Sys. v. Apple, Inc.*, 2021 WL 1176641 *10 (N.D. Cal. 2021). Rule 4 authorizes service in the manner approved under state law. Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). Additionally, where service on a domestic agent is valid and complete under both state law and the Due Process clause, service is proper and the Hague Convention has no further implications. *Volkswagenwerk Aktiengesellschaft*

1  *v. Schlunk*, 486 U.S. 694, 707 (1988).  Under California law, a foreign corporation may be served

2  by a subpoena under Rule 45(d) through "its general manager in [California]." *City of Roseville*,

3  2021 WL 1176641 at *4, 11; Cal. Corp. Code § 2110.

4      According to the Ninth Circuit:

5      service through a subsidiary as [a] 'general manager' [is proper where:] 1) the parent
       corporation was foreign and otherwise not readily available for service within

6      California[;] [and 2) there is] a ***sufficiently close connection with the parent***,
       [which] depends upon the frequency and quality of contact between the parent and

7      the subsidiary, the benefits in California that the parent derives from the subsidiary,
       and ***the overall likelihood that service upon the subsidiary will provide actual notice***

8      ***to the parent***.

9

10  *U.S.ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 949 (9th Cir. 2016) (emphasis

11  added and internal quotation marks omitted).  Such a relationship exists if the subsidiary provides

12  the parent corporation "substantially the business advantages that it would have enjoyed 'if it

13  conducted its business through its own offices or paid agents in the state.'" *Cosper v. Smith &*

14  *Wesson Arms Co.*, 53 Cal. 2d 77, 84 (1959). This is "a very broad definition," which can "include

15  the domestic sales representative(s) and local distributor(s) of a foreign corporation." *Hatami v. Kia*

16  *Motors Am., Inc.*, No. 08-cv-226, 2008 WL 4748233, at *2 (C.D. Cal. Oct. 29, 2008).

17      For reasons discussed above, Montage CA is a general manager of Montage for purposes of

18  service as it acts as a liaison between Montage and its U.S. customers.  As Montage admitted,

19  Montage CA "█████████████████████████████████████████

20  ████" Ex. 20 (Montage 08/29/22 letter). Montage and Montage CA "exchange some documents

21  pertaining to marketing and pre-sale and post-sale services provided by [Montage CA]."  Ex. 30

22  (Oct. 22, 2022 Ltr).  Montage and Montage CA are both members of MT Group. ████████

23  ███████████████████████████████████████████████████

24  ███████████████████████████████████████████████████

25  ███████████████████████████████████████████████████

26  ███████████████████████████████████████████████████

27

28

1 ███████████████████████████████████████████████████████████

2 *Id.*

3       In *City of Roseville*, the court found that a domestic subsidiary was the general manager of

4 its foreign parent sufficient for service under Rule 45 where the subsidiary was described as a "sales

5 and repair center" in the Parent's annual report, and the Parent represented that the subsidiary was

6 "in the business of providing technical support and business coordination to certain…existing"

7 customers. *City of Roseville*, 2021 WL 1176641 at *13. Montage CA has a very similar relationship

8 with Montage: Montage CA is a sales and marketing subsidiary of Montage and Montage has

9 represented that Montage CA "███████████████████████████████████████

10 ████████████████████████ Ex. 20 (Montage 08/29/22 letter). Thus, Montage CA is a general

11 manager because it "act[s] as a liaison between customers in the United States and the foreign

12 company." *Id.*; *See also Halo Elecs. Inc. v. Bel Fuse Inc.*, 2010 WL 2605195, *2 (N.D. Cal., June

13 28, 2010) (subsidiary qualified as general manager because it acted as a "liaison" between U.S.

14 customers and parent by fielding calls from "United States customers who encounter problems with

15 [parent's] products"). Further, the subsidiary in *City of Roseville* did not actually "engage in sales

16 or business development" for the parent, but this did "not change [the] result." *Id.* at *13. There is

17 evidence that Montage CA actually ████████████████████████████████████

18 ████████ Ex. 20 (8/29/22 letter.).

19       Further, there is "ample regular contact between" Montage and Montage CA. *Halo Elecs.*,

20 2010 WL 2605195 at *2. Montage provides Montage CA with the information it needs to █████

21 ███████████████████████████████████████████████████████████

22 The parties also "exchange some documents pertaining to marketing and pre-sale and post-sale

23 services provided by [Montage CA], such as roadmap presentations and product feature/schedule

24 presentations." Ex. 30 at 1 (Oct. 12, 2022 Ltr). In *Halo*, the court found that the subsidiary's

25 responsibility "for communicating with [the parent] regarding inquiries from potential and existing

26 customers in the United States" was contact "of sufficient rank and character to make it reasonably

27 certain" that the parent "would be appraised of the service of process." *Id.* at *2. The regular

28 communication between Montage and Montage CA regarding the marketing, sales, and customer

support services Montage CA provides is likewise sufficient to ensure Montage would be appraised of the service of process.

Montage CA also uses Montage's trade name and trademark and distributes marketing materials with Montage's logo, which is another basis to find that Montage CA is a general manager of the Shanghai entity. Ex. 28; *see Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1227 (C.D. Cal. 2008) (concluding that a subsidiary that distributed the parent corporation's vehicles in California and published and distributed marketing materials with the parent corporation's logo, trademarks, and tradename was the parent corporation's general manager for service purposes).

### 2.     This Court Has Personal Jurisdiction to Enforce Netlist's Subpoenas

#### a.     This Court Obtains Jurisdiction Through Service of Subpoena

"Personal jurisdiction over a non-party served with a subpoena *duces tecum* is obtained by a court pursuant to Rule 45(c)" of the Federal Rules of Civil Procedure." *City of Roseville Employees' Ret. Sys.*, 2021 WL 1176641, at *10; *see also Fed. Trade Comm'n v. Donor Rels., LLC*, No. 2:18-cv-183, 2018 WL 10467641, at *1 (D. Nev. Feb. 16, 2018) ("In the Ninth Circuit, a district court acquires personal jurisdiction in subpoena enforcement proceedings 'by service of the show cause order and the petition for enforcement of summons.'") (quoting *United States v. Gilleran*, 992 F.2d 232, 233 (9th Cir. 1993)). Thus, Netlist does not need to prove separately that this Court has personal jurisdiction over Montage because Netlist has properly served Montage through its general manager located in this District.

#### b.     Montage Has Minimum Contacts with California Related to Netlist's Subpoenaed Information

Further, Montage has minimum contacts with California related to Netlist's subpoena seeking documents and information about Montage Key Components.

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute has the same due process requirements as the federal long-arm statute. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir.

2004). The Due Process Clause requires that nonresident defendants have "minimum contact" with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placemen*t, 326 U.S. 310, 316 (1945). Personal jurisdiction over Montage is appropriate here because: (1) Montage purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws; (2) Netlist's subpoena requests arise out of or relate to Montage's California activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e. it is reasonable. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741–43 (9th Cir. 2013).

*First*, Montage purposefully availed itself to the privilege of conducting business in California by setting up a wholly owned subsidiary in California and using the California entity to sell Montage products, including Key Components, to customers in the United States. Montage further hires for positions in San Jose. Ex. 25 (job posting).  Montage employees traveled to California for meetings with clients. *E.g.* Ex. 32 (Montage attending Supplier Day event in San Francisco hosted by Micron, a major manufacturer of memory module products).  Further, Montage shares product details and information with Montage CA for sales of products designed, developed, and/or manufactured by Montage in the United States, including the components provided to Samsung. Ex. 33 at 1 (9/22 letter) ("Montage [CA] is to some extent involved with certain support functions relating to Montage DDR components that are provided to Samsung, *i.e.*, the products at issue in the underlying litigation."); *see In re German Auto. Mfr. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1068 (N.D. Cal. 2019) ("It is an 'unexceptional proposition' that when a foreign manufacturer 'seek[s] to serve a given… market,' the manufacturer may be subject to the jurisdiction of courts within that market even 'without entering the forum.'"); *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1059 (N.D. Cal. 2015) (finding specific jurisdiction over foreign parent where it used its subsidiary "as a 'distributor who has agreed to serve as the sales agent in the forum State' for the [products] that [parent] helped to manufacture") (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987)).

1     Further, Montage has explained the benefits of its "branches or offices in the United States,"

2 including that these offices allow Montage to "directly communicate with international giants in the

3 industry," and that their "global industrial layout" allows them to "allocate the resources of the entire

4 industry reasonably and leverage the synergy effect, with the operation efficiency enhanced and

5 costs controlled." Ex. 26 at 27 (official translation). Thus, Montage has purposefully availed itself

6 of the benefits of conducting business in the locations of its United States branches, including

7 Montage CA.

8     *Second*, there is no dispute that Netlist's subpoenas request information relating to

9 Montage's Key Components supplied to products sold within the United States, including by

10 Samsung Semiconductor, Inc., a California based company. Further, as discussed above, Montage

11 has used its CA subsidiary to provide support for the very products at issue in the underlying patent

12 infringement litigation.

13     *Third*, Montage cannot carry the burden to show that exercising jurisdiction by this Court

14 over this limited subpoena-enforcement action would be unreasonable. *See Burger King Corp. v.*

15 *Rudzewicz*, 471 U.S. 462, 476–77 (1985) (holding once the Plaintiffs have shown that the exercise

16 of personal jurisdiction satisfies the first two prongs of the personal jurisdiction test, the burden

17 shifts to the defendant to make a "compelling case" that the exercise of jurisdiction would be

18 unreasonable).  As Montage admitted, Montage

19

20 . *See* Ex. 20 (8/29/22 letter).

21     Thus, Montage should be expected, and it is reasonable, for courts in California to enforce a

22 subpoena seeking discoverable information from Montage.

23          **c.**    **Montage CA Is an Alter Ego of Montage**

24     Even if this Court finds separate personal jurisdiction analysis is necessary, this Court has

25 proper personal jurisdiction against Montage for this subpoena-enforcement action because

26 Montage CA is an alter ego of Montage. *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d

27 938, 954 (N.D. Cal. 2015) (A corporate subsidiary's contacts with a forum state "may be imputed

28

to the parent where the subsidiary is the parent's alter ego").  An alter ego relationship exists where "(1) [there] is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *See City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 635 (N.D. Cal. 2020) (citing *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)).

*First*, Montage and Montage CA share overlapping directors and employees such as Howard Yang and Stephen Tai.  Ex. 22-23.  Montage CA employees, including Christopher Cox and Joe Quddus, attended meetings at JEDEC, an organization for setting of standards relevant to Netlist's accused patents at issue, on behalf of Montage.  *See, e.g.* compare Ex. 34 (Linkedin CV for Cox showing Montage CA employee) and Ex. 35 (ballot showing Cox attended the meeting on behalf of Montage Technology Co., Ltd., i.e. Montage Shanghai) and Ex. 38 (showing representing company is Montage Shanghai); *compare* Ex. 36 (Linkedin CV for Joe Quddus showing Montage CA employee); Ex. 37 (Dec. 3-4, 2019 Meeting Minutes showing he attended the meeting on behalf of Montage Shanghai).

*Second*, Montage operates the website for all Montage related companies and posts job listing and hiring information for positions located in San Jose (i.e. Montage CA's address). Ex. 25.[2] Montage prepares annual reports for the corporation group incorporating information of Montage CA.  Ex. 26 (Montage 2021 Annual Report with translation). Montage CA uses the same trademark as Montage and owns the registration for the Montage mark in the United States. Ex. 28 (TM Registration).  Indeed, Montage claims its U.S. subsidiaries as branches and offices of the parent company.  Ex. 26 (Translation).

*Third*, Montage admits that it conducts business in the United States through Montage CA, which has direct contact with U.S.-based Montage customers, making Montage CA simply a market conduit for Montage   Ex. 20 (Letter); *see NetApp, Inc. v. Nimble Storage, Inc.*, 2015 WL 400251 at *7 (N.D. Cal. Jan. 29, 2015) (a subsidiary is the alter-ego of its parent if the parent uses the subsidiary "as a marketing conduit," but subsidiary is not a marketing conduit if plaintiff "does not

---

[2] . https://www.montage-tech.com/Social_Recruitment

allege any facts regarding the marketing and product relationship between [parent] and [subsidiary]") (citing *United States v. Toyota Motor Corp.*, 561 F. Supp. 354, 359 (C.D. Cal. 1983) for marketing conduit test). The court in *Toyota Motor* found that the domestic subsidiary acted as a marketing conduit for the parent where the subsidiary handled "[a]ll advertising and marketing of [parent] products" in the United States and the parent "derive[d] substantial economic benefits from the sales of its [products] by its subsidiary in the United States." *Toyota Motor*, 561 F. Supp. 354, 356. The court noted that although the subsidiary "operated as a distinct corporate entity, with its own books, records, bank accounts, tax returns, financial statements, and accounting procedures, there is a significant overlap between the senior management and board of directors of the parent and the subsidiary." *Id.* As in *Toyota Motor*, there is a significant overlap between the senior management and board of directors of Montage and Montage CA, indeed, the officers the two entities have in common make up the majority of Montage CA's board of directors. Ex. 39, 23 (Montage CA Statement of Incorporation) (Montage Corporate Governance); *Cf. Netapp*, 2015 WL 400251 at *6 (finding some director overlap not sufficient for alter-ego relationship because "NetApp does not allege that [parent's] directors or officers controlled [subsidiary], or formed a board majority... which is not sufficient to satisfy the unity of interest or ownership test."). Further, as discussed above, *supra* 7-8, Montage has also explained the significant benefits it receives from its United States branches. Montage CA is the only U.S. subsidiary of Montage designated to assist with sales and marketing of memory products in the United States, and thus, Montage reaps substantial economic benefits from these services. Ex. 33 (9/22 letter explaining that Montage's other U.S. entity, Montage TX, "has no commercial products"); Ex. 20 (8/29 letter) ███████████ ████████████████████████████████████████████████████████████ As such, Montage CA's contacts with California "may be imputed to the parent," at least for purposes of compliance with Netlist's subpoenas.  *See Stewart*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015).

### 3.    Netlist's Subpoena Provides Appropriate Place of Compliance

Montage further asserts that the subpoenas are enforceable because the place of compliance is more than 100 miles away from China where Montage is located.  However, this argument lacks merit in this context because Netlist's subpoena requires Montage to produce documents and attend

deposition in San Jose and San Francisco, which are both well within 100 miles from where Montage CA—Montage's general manager—is located.  Ex. 39 (State registration record, showing address at 101 Metro Drive, Suite 500, San Jose, California).  As detailed above, Montage conducts its U.S. based business through Montage CA and shares the location of Montage CA's business address. Ex. 26 (certificated translation claiming that Montage has branches and/or offices within the United States); *supra* at 15-16.  Further, any deposition in this case would be conducted remotely, and Netlist is willing to accommodate the schedule of Montage witnesses if they are located oversees. Netlist also agreed to receive production of documents through electronic means.  Thus, Netlist's subpoenas comply with the requirements of Rule 45(c) and they are not otherwise overly burdensome for Montage Shanghai or Montage CA to comply.  *See City of Roseville*, 2021 WL 1176641 *10; *see also id*. Dkt. 141-11 (compelling compliance with the subpoena which required Pegatron Corporation, a Taiwan based company served through its U.S. based subsidiary, to produce documents in San Francisco).

### C.   Montage CA Should Be Compelled to Comply with Netlist's Deposition and Document Production Subpoenas

Alternatively, Montage CA should be compelled to produce responsive documents and provide witness(es) for deposition on the topics identified above.  Montage CA does not dispute the sufficiency of Netlist's service of the subpoenas or the relevance of the requested information regarding the technical details of Montage's products.  Montage CA, however, only objects to the requested deposition and document production on the ground that it does not have possession, custody, or control of such information.  *See* Ex. 20 at 3 (Barlett 2022-08-29 Ltr)

Montage CA's argument is inconsistent with the law.

The Federal Rules of Civil Procedure require a party served with a subpoena to produce those records that are in its "possession, custody or control."  Fed. R. Civ. P. 45(a).  "Control is defined as the legal right to obtain documents upon demand."  *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (citing *US v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450,

1452 (9th Cir. 1989)).   In determining whether an entity has legal control over documents or information within its affiliated entity's possession, district courts in this Circuit have considered multiple factors including: "(1) complicity in storing or withholding documents; (2) commonality of ownership; (3) exchange or intermingling of directors, officer or employees; (4) exchange of documents in the ordinary course of business; (5) any benefit or involvement by the non-party corporation in the transaction; (6) involvement of the non-party corporation in the litigation; and (7) significant sharing of business resources." *Better Care Plastic Tech. Co. v. Gredale, LLC*, No. 21-cv-216, 2022 WL 2046206, at *9 (C.D. Cal. Mar. 4, 2022) (citation omitted).

Montage CA has a legal right to access and obtain documents from Montage Shanghai because Montage CA and Montage Shanghai frequently share documents and information with each other during the ordinary course of business.  As Montage admitted, Montage Shanghai provides Montage CA information it needs to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Ex. 20 at 1 (8/29/22 letter).  Montage CA and Montage Shanghai also "exchange some documents pertaining to marketing and pre-sale and post-sale services provided by [Montage CA], such as roadmap presentations and product feature/schedule presentations." Ex. 30 at 1.

Further, Montage and Montage CA share overlapping directors and employees such as Howard Yang, Stephen Tai, Christopher Cox, and Joe Quddus. *See supra* at 15.  Thus, these directors and employees at Montage CA have a right to access documents and information in the possession or custody of Montage Shanghai.

And, as noted above, Montage CA is merely an alter ego of Montage Shanghai that shares business resources, and therefore has the same access to the documents requested in Netlist's subpoenas. "In addition to this absolute form of legal control, some courts have also found that one corporation controls another in the situation where one is the alter ego of the other corporation." *QC Labs v. Green Leaf Lab, LLC*, No. 18-cv-1451, 2019 WL 6797250, at *8 (C.D. Cal. July 19, 2019) (quoting *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 305-06 (M.D.N.C. 1998) (collecting cases)).  As detailed above:

- Montage Shanghai and Montage CA share directors, employees,

- Montage Shanghai and Montage CA share the same websites;

- Montage Shanghai and Montage CA prepare joint annual reports, where Montage Shanghai references its U.S. subsidiaries as its "branches" and "offices";

- Montage Shanghai hires for positions at Montage CA; and

- Montage Shanghai derives significant benefits from its CA subsidiary, which is a conduit of Montage Shanghai's business in connection with the subject of Netlist's subpoenas.

*Supra* at 15-16.   Thus, Montage CA has possession, custody, or control of Netlist's requested information and documents.   Therefore, as an alternative, Montage CA should provide a witness to testify as to the topics identified in this Motion, *supra* 4-5.

## IV.   CONCLUSION

For the foregoing reasons, Montage Technology, Inc. and Montage Technology Co., Ltd. should be compelled to provide witness(es) to attend deposition as to topics and questions identified Ex. 24 attached to this Motion.

Dated:   December 21, 2022

Respectfully submitted,

IRELL & MANELLA LLP

By: */s/  Hong Zhong*
Jason G. Sheasby
jsheasby@irell.com
Hong (Annita) Zhong
hzhong@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **CERTIFICATE OF CONFERENCE**

I hereby certify that, on December 16, 2022, counsel of each side met and conferred.  The parties are at an impasse because Defendants refuse to comply with the subpoenas.

*/s/ Yanan Zhao*
Yanan Zhao