JASON R. BARTLETT (SBN #214530)
jbartlett@mkwllp.com
JASON A. CROTTY (SBN #196036)
jcrotty@mkwllp.com
MAURIEL KAPOUYTIAN WOODS LLP
450 Sansome Street, Suite 1005
San Francisco, California 94111
Telephone:  (415) 738 - 6334
Facsimile:   (415) 738 - 2315

*Attorneys for Defendants,*
MONTAGE TECHNOLOGY, INC. and
MONTAGE TECHNOLOGY CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>MONTAGE TECHNOLOGY, INC. and<br>MONTAGE TECHNOLOGY CO., LTD.,<br><br>                    Defendants. | Case No.:  5:22-mc-80337<br><br>**DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL COMPLIANCE OF SUBPOENA**<br><br>Hearing Date:  January 31, 2023<br>Time:  10:00 AM<br>Magistrate Judge Virginia K. DeMarchi |

1

## **TABLE OF CONTENTS**

2

I. BACKGROUND ....................................................................................................... 1

3

    A.    The Underlying Lawsuit in Texas ............................................................. 1

4

    B.    The Montage Entities and the Products at Issue ..................................... 2

5

    C.    The Subpoenas and the Montage Production ........................................... 3

6

II. APPLICABLE LAW .............................................................................................. 5

7

III. ARGUMENT ........................................................................................................ 6

8

    A.    Netlist Failed to Comply with the Local Rules ....................................... 6

9

    B.    The Subpoenas to Montage Shanghai Are Defective and Unenforceable ............. 8

10

        1.   Service on Montage Shanghai was Improper ................................... 8

11

        2.   The Court Lacks Personal Jurisdiction Over Montage Shanghai ................. 10

12

        3.   Subpoenas to Montage Shanghai Are Also Facially Defective Because They Purport to Compel Production Beyond the Geographical Limits of

13

              Rule 45(c) ................................................................................... 17

14

    C.    Montage CA Has Produced the Technical Documents in Its Possession.............. 18

15

    D.    The Subpoenas Seek Trade Secrets and Netlist Has Not Demonstrated "Substantial Need" for Additional Information ..................................... 19

16

17

IV. SANCTIONS ....................................................................................................... 22

V. CONCLUSION ...................................................................................................... 22

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                 **Page(s)**

3

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,*
4    94 F.3d 586 (9th Cir. 1996) ............................................................................ 16

5 *AngioScore, Inc. v. TriReme Med., Inc.,*
   No. 12-CV-03393-YGR JSC, 2014 WL 6706873 (N.D. Cal. Nov. 25, 2014) ........................ 21
6

7 *Apple Inc. v. Allan & Assocs. Ltd.,*
   445 F. Supp. 3d 42 (N.D. Cal. 2020) .................................................... 11, 12, 13, 15

8 *Apple, Inc. v. Samsung Elecs. Co. Ltd.,*
   2012 WL 6115623 (N.D. Cal. Dec. 10, 2012) ............................................... 19
9

10 *Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
   874 F.3d 1064 (9th Cir. 2017) ............................................................................ 16
11

12 *Blumenthal Distrib., Inc. v. Herman Miller*, Inc.,
   2015 WL 12778353 (C.D. Cal. Oct. 22, 2015) .................................................. 10

13 *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*,
   163 F.R.D. 329 (N.D. Cal. 1995) ................................................................. 6, 19
14

15 *Corcoran v. CVS Health Corp.,*
   169 F. Supp. 3d 970 (N.D. Cal. 2016) ......................................................... 13
16

17 *Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ................................................................................. 10

18 *Dhillon v. Does 1-10,*
   2013 WL 12144121 (N.D. Cal. July 21, 2013) ............................................ 18
19

20 *Dole Food Co. v. Watts,*
   303 F.3d 1104 (9th Cir. 2002) ................................................................... 15
21

22 *Dugan v. Lloyds TSB Bank, PLC,*
   2013 WL 4758055 (N.D. Cal. Sept. 4, 2013) .............................................. 18

23 *Eclectic Properties E., LLC v. The Marcus & Millichap Co.*,
   2012 WL 713289 (N.D. Cal. Mar. 5, 2012) ............................................... 13
24

25 *Exxon Shipping Co. v. U.S. Dep't of Interior,*
   34 F.3d 774 (9th Cir. 1994) ..................................................................... 5
26

27 *F.T.C. v. Compagnie De Saint-Gobain-Pontà-Mousson,*
   636 F.2d 1300 (D.C. Cir. 1980) ................................................................. 9

28

- ii -

*Fujikura Ltd. v. Finisar Corp.*,
   2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ................................................................. 6, 8, 9, 14

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ........................................................................................ 3, 21

*Genentech, Inc. v. Trustees of Univ. of Pennsylvania*,
   2011 WL 5373759 (N.D. Cal. Nov. 7, 2011) ........................................................................ 18

*Gerritsen v. Warner Bros. Ent. Inc.*,
   116 F. Supp. 3d 1104 (C.D. Cal. 2015) ................................................................................. 12

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006) ............................................................................................ 6

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
   2018 WL 1399865 (N.D. Cal. Mar. 19, 2018) ...................................................................... 19

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014) .................................................................................................. 10

*Halo Elecs., Inc. v. Bel Fuse Inc.*,
   2010 WL 2605195 (N.D. Cal. June 28, 2010) ...................................................................... 14

*Hambrecht Wine Grp., L.P. v. Millennium Imp. LLC*,
   2006 WL 3302428 (N.D. Cal. Nov. 14, 2006) ...................................................................... 19

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ......................................................................................... 12, 15

*Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) ................................................................................................. 16

*In Re Apple iPhone Antitrust Litigation*,
   2020 WL 5993223 (N.D. Cal. Oct. 9, 2020) ............................................................... 6, 20, 21

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) ............................................................................................... 18

*In re Koninklijke Philips Pat. Litig.*,
   2020 WL 1865294 (N.D. Cal. Apr. 13, 2020) ...................................................................... 20

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   2012 WL 629225 (N.D. Cal. Feb. 27, 2012) ........................................................................ 22

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) ................................................................................................. 16

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945) .............................................................................................................. 15

- iii -

*LegalZoom.com v. Rocket Law. Inc.*,
  2015 WL 12832823 (N.D. Cal. Mar. 23, 2015) ....................................................... 22

*Lemberg Law LLC v. Hussin*,
  2016 WL 3231300 (N.D. Cal. June 13, 2016) .......................................................... 6

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co*.,
  2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) .......................................................... 12

*M.G. v. Bodum USA, Inc.*,
  2020 WL 1667410 (N.D. Cal. Apr. 3, 2020) ............................................................. 18

*Moody v. Charming Shoppes of Delaware, Inc.*,
  2008 WL 2128955 (N.D. Cal. May 20, 2008) .......................................................... 13

*NetApp, Inc. v. Nimble Storage, Inc.*,
  2015 WL 400251 (N.D. Cal. Jan. 29, 2015) ....................................................... 12, 13

*Payoda, Inc. v. Photon Infotech, Inc.*,
  2015 WL 4593911 (N.D. Cal. July 30, 2015) .......................................................... 13

*Playboy Enterprises, Inc. v. Welles*,
  279 F.3d 796 (9th Cir. 2002) ..................................................................................... 11

*Pokemon Co. Int'l, Inc. v. Shopify, Inc.*,
  2017 WL 697520 (N.D. Cal. Feb. 22, 2017) (denying motion ..................... 11, 15, 17

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ............................................................................*passim*

*Reynolds v. Binance Holdings Ltd.*,
  481 F. Supp. 3d 997 (N.D. Cal. 2020) ........................................................... 11, 13, 14

*Rojas v. Hamm*,
  2019 WL 3779706 (N.D. Cal. Aug. 12, 2019) ........................................................ 12

*Schwarzenegger v. Fred Martin Motor Co*.,
  374 F.3d 797 (9th Cir. 2004) ..................................................................................... 15

*SiteLock, LLC v. GoDaddy.com, LLC*,
  338 F.R.D. 146 (D. Or. 2021) .................................................................................. 5, 9

*Somers v. Digital Realty Tr. Inc.*,
  2017 WL 2954909 (N.D. Cal. July 11, 2017) ........................................................... 8

*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) ........................................................................ 12

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
  2019 WL 6134958 (N.D. Cal. Nov. 19, 2019).......................................................... 17

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

*Uniloc USA, Inc. v. Apple Inc.*,
  2020 WL 6262349 (N.D. Cal. Oct. 23, 2020) ................................................................. 17

*Viasat, Inc. v. Space Sys./Loral, LLC*,
  2014 WL 12577593 (S.D. Cal. June 30, 2014) ............................................................... 9

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 2929439 (N.D. Cal. July 7, 2017) ................................................................... 20

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) ............................................................................*passim*

*World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of New York, Inc.*,
  2011 WL 5118525, n.3 (N.D. Cal. Oct. 28, 2011) ......................................................... 8

*Yih v. Taiwan Semiconductor Mfg. Co., Ltd.*,
  2020 WL 6290377 (N.D. Cal. Oct. 27, 2020) ................................................................. 13

**Statutes**

28 U.S.C. § 1783 ....................................................................................................................... 8

**Rules**

Civil Local Rule 37 ............................................................................................................. 6, 8

Fed. R. Civ. P. 4 ................................................................................................................. 9, 10

Fed. R. Civ. P. 26(b)(2) ........................................................................................................... 6

Fed. R. Civ. P. 45 ........................................................................................................*passim*

**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, §§ 1062, 2454
  (3d ed. 2022) ...................................................................................................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

Beginning in July 2022, Netlist served eight subpoenas on several Montage entities, both domestic and foreign.  The requests were overbroad, but the relevant U.S.-based Montage entity produced hundreds of pages of confidential technical documents detailing the design and operation of the relevant products.  Nevertheless, Netlist insisted the production was insufficient, and, although later belied by long periods of inaction, it asserted that time was of the essence because of expert deadlines.  On December 21, 2022 — five months after the initial subpoenas were served and the day before it served its expert reports — Netlist filed this procedurally deficient motion to compel ("Netlist's Motion") on unspecified requests in the subpoenas.

The U.S.-based Montage entity has produced the technical documents it possesses and those are all the documents that appear to be relevant.  Discovery of the parent company in Shanghai, China should have been conducted via the Hague Evidence Convention.  Moreover, Netlist did not properly serve the Chinese entity, and the Court does not have personal jurisdiction over it anyhow.  The subpoenas also improperly purport to require compliance approximately 6,000 miles from Shanghai.  For these and the other reasons detailed below — including that fact discovery has closed and Netlist's expert reports have already been served — Netlist's Motion should be denied.

## I. BACKGROUND

### A.      The Underlying Lawsuit in Texas

Netlist and Samsung are involved in patent litigation in Texas:  *Netlist, Inc. v. Samsung Electronics Co., Ltd. et al.*, Case No. 2:21-cv-00463-JRG (E.D. Texas).  Montage provides components for some of the Samsung products at issue, but is not a party.  Based on the complaint, Netlist asserts that Samsung products practice technical standards, namely JEDEC specifications regarding Double Data Rate 4 and 5 Synchronous Dynamic Random-Access Memory.  Netlist contends that the asserted patents cover the JEDEC specifications and, therefore, the accused Samsung products infringe.  (*See* Declaration of Hong Zhong attached to Netlist's Motion (ECF No. 1-1; "Zhong Decl."), Ex. 11 (ECF No. 1-13), ¶ 17, 57, 72, and 86.)

Thus, the underlying infringement issues appear to pertain to whether Samsung products practice JEDEC specifications.

### B. The Montage Entities and the Products at Issue

Montage Technology, Inc. ("Montage CA") is located in San Jose, and it is a subsidiary of Montage Technology Co., Ltd. ("Montage Shanghai"), a Chinese company. (*See* Declaration of Robert Jin in support of Opposition ("Jin Decl."), ¶ 3.) Montage Shanghai designs and develops semiconductor products, but it does not conduct business in California, is not licensed to conduct business in California, has no employees in California, and owns no real property in California. (*See* Declaration of Qin Zhou in support of Opposition ("Zhou Decl."), ¶¶ 3-4.) The relationship between Montage Shanghai and Montage CA is governed by a Service Agreement (Zhong Decl., Ex. 31 (ECF No. 3-7)), which states that Montage CA is an independent contractor, that the parties are not agents of each other, and that each controls its own day-to-day decision-making. (*Id.* at Art. 19; *see also* Jin Decl., ¶ 3; Zhou Decl., ¶ 6.) Montage CA supports Montage Shanghai by providing marketing and pre-sale and post-sale services in the U.S. market. (Jin Decl., ¶ 4; Zhou Decl., ¶¶ 5, 7.)

Montage CA and Montage Shanghai share some common resources for marketing and other pre-sale and post-sale activities and these documents include two-page product flyers (available online) and confidential 200+ page datasheets that provide comprehensive information regarding the products at issue. (*See* Declaration of Jason Bartlett in support of Opposition ("Bartlett Decl."), Ex. A (flyer) and Ex. B (data sheet); Jin Decl., ¶ 7; Zhou Decl., ¶ 12.) However, Montage Shanghai is solely responsible for the design and development of Montage products. (*Id.*, ¶¶ 7, 10.) Other than the data sheets, detailed documents regarding design and development, including source code, are exclusively located in China and are accessible only by Montage Shanghai. (*Id.*, ¶¶ 12, 16-17; Jin Decl., ¶ 6.) Access to source code is limited to specific employees of Montage Shanghai. (Zhou Decl., ¶ 17.)

To perform its role, Montage CA provides product documentation and product samples and assists customers in understanding the functionality of Montage products. (Jin Decl., ¶ 7.) But it does not need to know, and does not know, all the intricate details of *how* they function or

the details regarding precisely *how* those functions are implemented in the silicon.  (*Id.*, ¶ 6.)
Only Montage Shanghai has such detailed design information, which is considered proprietary
even within Montage.  (Zhou Decl., ¶¶ 9, 12.)  Montage Shanghai does not share that
information with Montage CA in San Jose.  (*Id.*, ¶ 9.)  Additionally, Montage Shanghai manages
the relationship with Samsung, which is located in Seoul, South Korea.  (*Id.*, ¶ 11.)  Transactions
with Samsung do *not* include U.S.-based Montage entities — none of the parties are in California
and the transactions do not occur in California.  (*Id.*)

Thus, Montage CA performs sales and marketing-related tasks in the United States, and it
provides general product information (two-page flyers) and detailed product information (200+
page datasheets, pursuant to NDAs) to customers and potential customers.[1]  (Jin Decl., ¶¶ 3-7.)

### C.      The Subpoenas and the Montage Production

On July 14, 2022, Netlist served a third-party document subpoena on Montage CA,
broadly seeking proprietary information regarding, among other things, the design and operation
of components provided to Samsung.  (*See* Zhong Decl., Ex. 3 (ECF No. 1-5).)  Many requests
were facially overbroad, seeking, for example, information regarding "future" products and
products never provided to Samsung.

Montage CA served timely objections (*see* Bartlett Decl., Ex. C) and promptly produced
approximately 1,100 pages, primarily proprietary datasheets that provide 180-300 pages of
detailed technical information per component.  (*See id.*, Ex. D)  Those documents show full
compliance with JEDEC specifications, though publicly available documents also confirm
JEDEC compliance.[2]  In short, Montage CA produced the relevant technical documentation it
possesses, and that is all that appears to be relevant.  *See, e.g., Fujitsu Ltd. v. Netgear Inc.*, 620

---

[1] Montage TX is a separate Montage entity that was also served with multiple subpoenas
by Netlist.  (*See* Zhong Decl., Exs. 4, 5, 7 (ECF Nos. 1-6, 1-7, 1-8).)  However, its business is
unrelated to the memory products at issue, and it has not released products.  Thus, it has no
responsive documents.  The subpoenas were also issued in the Eastern District of Texas, so they
are not at issue in this Motion.

[2] For example, the flyer for the Montage M88DR4RCD02P that is freely available on the
Montage website states:  "Fully compliant with JEDEC DDR4RCD02 specification."  (*See*
Bartlett Decl., Ex. A at 1.)

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

F.3d 1321, 1327 (Fed. Cir. 2010) (standards documents sufficient to prove infringement by standard-compliant products because when "an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

Nevertheless, Netlist requested more documents.  Montage sent letters requesting that Netlist explain the alleged relevance of additional materials and detail its professed need for additional information.  (*See, e.g.,* Zhong Decl., Ex 18 (ECF No. 1-20).)  Montage explained that because the requested information contained confidential trade secret information, Netlist would have to demonstrate "substantial need" to justify production.  (*Id.* (citing cases).)  Montage indicated that most or all the relevant information could be obtained through Samsung and/or JEDEC documentation.  (*Id.*)  Montage also requested the infringement contentions to better understand the issues.  (*Id.* at 3, 5.)  Although those contentions were never provided to Montage during the meet and confer, excerpts were attached to the Motion.  (*See id.*, Ex. 12 (ECF No. 1-14).)  However, most of the substance has been omitted, so both the Court and Montage are in the dark as to Netlist's actual infringement contentions.  (*See id.*)

Netlist responded to the Montage letter but ignored many issues.  (*See id.*, Ex. 19 (ECF No. 3-4).)  However, it did indicate that Netlist was interested in technical details regarding *how* Montage products implemented JEDEC specifications.  (*See id.*)  Netlist provided a list of claims, but no infringement contentions.  Nor did it explain what documents it had requested from Samsung or describe the documents produced by Samsung.  Notably, despite numerous requests, Netlist did not articulate any alleged "substantial need."  Nevertheless, the letter made it even clearer that Montage CA did not possess additional responsive documents.

In August, Netlist served a deposition subpoena on Montage CA.  (*See id.*, Ex. 6 (ECF No. 1-8).)  Montage CA served objections (*see* Bartlett Decl., Ex. E) and because there were overlapping issues, the meet and confer efforts related to both subpoenas.  Montage CA agreed to provide a witness to authenticate its documents (or an authenticating declaration) and encouraged the parties to stipulate to authenticity.  (*Id.* at 6-7.)  However, Netlist did not

schedule a deposition before the close of fact discovery.  Montage CA also sent a letter detailing the relationships of the Montage entities.  (*See* Zhong Decl., Ex. 20 (ECF No. 3-5).)

In October, Netlist purported to serve two subpoenas on Montage Shanghai by way of its subsidiary Montage CA.  (*See id.*, Exs. 9-10 (ECF Nos. 1-11, 1-12).)  On October 20, 2022, Montage sent a letter stating that service was improper and that even if service was proper, the Northern District of California would lack personal jurisdiction over Montage Shanghai.  (*See id.*, Ex. 21 (ECF No. 1-23).)  Montage reserved the right to serve objections if Netlist were to show that service and jurisdiction were proper.[3]  (*Id.*)  On October 31, 2022, Montage provided an even more detailed explanation of its position, including numerous citations to relevant authority.[4]  (*See* Bartlett Decl., Ex. F.)

Although Netlist had earlier asserted (in August) that speed was important because of then-approaching expert report deadlines, it did not respond for approximately seven weeks.  The Netlist Motion was ultimately filed the day before opening expert reports were served (and four months after Montage CA produced documents).  Because the requested information cannot realistically be used outside of an expert report, the information sought in the Motion cannot be meaningfully used by Netlist, as both fact and expert discovery will be closed before a hearing on the Motion.  (*See* Zhong Decl., Ex. 13 (ECF 1-15).)  Nor has Netlist moved to take a Montage deposition after the close of fact discovery, as it has in other circumstances.  (*See* Bartlett Decl., Ex. G.)  To use any information obtained from this Motion, it thus appears that Netlist would have to seek permission from the Court in Texas.

## II.  APPLICABLE LAW

The Federal Rules of Civil Procedure "afford nonparties special protection against the time and expense of complying with subpoenas."  *Exxon Shipping Co. v. U.S. Dep't of Interior*,

---

[3] Netlist suggests that Montage somehow waived all objections by initially objecting to service and personal jurisdiction, but provides no legal support for waiver in these circumstances and the law is to the contrary.  *See, e.g.*, *SiteLock, LLC v. GoDaddy.com, LLC*, 338 F.R.D. 146 (D. Or. 2021) (finding no waiver where parties were involved in meet and confer efforts).

[4] Montage later raised additional issues regarding service as well as issues regarding the potential application of Chinese law to discovery served outside the Hague Evidence Convention.  (*See* Bartlett Decl., Exs. H and I.)

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

34 F.3d 774, 779 (9th Cir. 1994); *Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." (citation omitted)).

The scope of discovery for a Fed. R. Civ. P. 45 subpoena is the same as under Rule 26(b). However, Rule 45 provides "protections where a subpoena seeks trade secret or confidential commercial information from a nonparty." *In Re Apple iPhone Antitrust Litigation*, 2020 WL 5993223, at *3 (N.D. Cal. Oct. 9, 2020) (*quoting Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006)). Trade secret information includes "important proprietary information" or information that the nonparty has historically sought to maintain confidential. *See Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995). If a non-party can show that requested information is "a trade secret or other confidential research, development, or commercial information," the burden then shifts to the requesting party to "show a 'substantial need for the testimony or material that cannot be otherwise met without undue hardship'." *In Re Apple*, 2020 WL 5993223 at *3 (*quoting Gonzales*, 234 F.R.D. at 684). Determining "substantial need" requires considering the relevance and importance of the material sought, as well as the availability of facts from other sources. *See id.*

## III. ARGUMENT

### A. Netlist Failed to Comply with the Local Rules

Civil L.R. 37-2 requires that a motion to compel set forth the text of each request, followed by the objections and/or responses. The moving papers must detail — for each request — the party's contention that it is entitled to the requested discovery and how proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied. Netlist did not comply with these requirements.[5] Indeed, Netlist did not even include the Montage objections as exhibits.

---

[5] Civil L.R. 37-2 applies to motions to enforce a Fed. R. Civ. P. 45 subpoena: "On a motion to compel compliance with a Rule 45 subpoena, the Local Rules in this District require a party to 'detail the basis for the party's contention that it is entitled to the requested discovery and show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied.'" *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *3 (N.D. Cal. Oct. 5, 2015) (quoting Civil L.R. 37-2).

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

1      Netlist cites several requests in its brief (*see* ECF No. 3-3 at 4-5) but does not include the

2 responses or its contentions regarding each request, including relevance and proportionality.

3 This matters because Montage *has* complied with some of the cited requests and others are never

4 even addressed in the Motion.  For example, Montage produced documents identifying

5 components (Request No. 1), showing operation and design of those components (Request

6 No. 2), and compliance with JEDEC specifications (Request No. 15).  Montage also agreed to

7 produce a witness to authenticate its documents (Topic No. 1), but Netlist never scheduled that

8 deposition and fact discovery is now closed.  At least Request Nos. 1, 4, and 10 and Topic Nos.

9 1, 6, 8, and 9, are never mentioned in Netlist's brief.

10      Although it did not include the objections, Netlist repeatedly asserts that Montage does

11 not contest the relevance of the requested information, which is false and belied by the objections

12 (and the correspondence).  (*See, e.g.*, Bartlett Decl., Ex. C at 5, ¶ 18 ("Montage objects to the

13 production of source code as not relevant and unduly burdensome, not proportional, and highly

14 confidential and proprietary."); Zhong Decl., Ex. 18 at 1 (ECF No. 1-20) ("Montage believes its

15 production — more than 1,100 pages of technical documentation, much of it highly proprietary

16 — as well as documents that can be obtained from Samsung and publicly available documents

17 from the JEDEC standard, provide all the information that might conceivably be relevant to the

18 underlying litigation."); *Id.*, Ex. 20 at 2 (ECF No. 3-5) ("Regarding your question regarding the

19 scope of 'relevant' documents, Montage believes that the documents it has produced are the

20 relevant documents.").

21      Confusingly, Netlist does not actually seek further responses to its requests.  Rather, it

22 seeks answers to a list of questions included in an exhibit (*see id.*, Ex. 24 (ECF No. 2-3)), most

23 of which are never mentioned in the brief.  That exhibit was not part of any request, nor was it

24 disclosed to Montage until just before Netlist's Motion was filed.  Obviously, Netlist cannot

25 obtain relief on issues it never discussed, let alone shown to be relevant, proportional, and

26 otherwise proper.  Indeed. Netlist does not even explain how the various Montage components

27 operate within the larger accused Samsung products, let alone allege how the operation of those

28 components might be relevant to specific asserted claims.

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

Thus, the failure to comply with Civil L.R. 37-2 hinders the ability of Montage to respond and the Court to assess the alleged discoverability of the requested information. The fact that Netlist did not comply with the Local Rules is grounds to deny the Motion. *See, e.g., Somers v. Digital Realty Tr. Inc.*, 2017 WL 2954909, at *8 (N.D. Cal. July 11, 2017) (denying motion where moving party failed to comply with Civil L.R. 37-2).[6]

**B.     The Subpoenas to Montage Shanghai Are Defective and Unenforceable**

Netlist cannot enforce the subpoenas against Montage Shanghai because it did not properly effect service and the Court lacks personal jurisdiction.

**1.   Service on Montage Shanghai was Improper**

**a.   Netlist does not attempt to establish that it effected service on Montage Shanghai pursuant to Rule 45(b).**

Third-party subpoenas must be served pursuant to Fed. R. Civ. P. 45(b), which requires personal service on the subpoenaed party within the United States. *See, e.g., Fujikura Ltd.*, 2015 WL 5782351, at *7 (collecting cases). Although service is disputed, Netlist did *not* include evidence that the subpoenas were ever served, as the exhibit copies of those subpoenas (unlike the others) do not include a signed proof of service. (*See* Zhong Decl., Exs. 9-10 (ECF Nos. 1-11, 1-12).) Thus, Netlist has failed to prove service under Rule 45, which requires filing a certified statement from the server showing the date and manner of service. (*See* Fed. R. Civ. P. 45(b)(4).) Netlist's attorney declaration also suggests that the subpoenas might have been served on an agent of Montage CA, not on Montage CA itself. (*See* Zhong Decl. (ECF No. 1-1), ¶¶ 11-12.) Of course, Netlist does not even attempt to establish that personally served Montage Shanghai in China because service must be "within the United States." (*See* Fed. R. Civ. P. 45(b)(2).[7]

---

[6] Obviously, Netlist cannot provide this threshold information for the first time in its reply brief. *See World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of New York, Inc.*, 2011 WL 5118525, at *6, n.3 (N.D. Cal. Oct. 28, 2011) ("New evidence or analysis presented for the first time in a reply is [improper] and will not be considered.") (citation omitted).

[7] Pursuant to Rule 45(b)(3) and 28 U.S.C. § 1783, a U.S. national or resident may be served in a foreign country, but Montage Shanghai is neither a national nor a resident of the

- 8 -

**b. Rule 4 applies only to summons, not Rule 45 subpoenas.**

Netlist asserts that it was able to effect service on Montage Shanghai through its California affiliate in San Jose pursuant to Rule 4. Netlist fails to acknowledge that the Ninth Circuit has not addressed the issue of whether a Fed. R. Civ. P. 45 subpoena can be served under Rule 4 and district courts in the Circuit are divided. *See, e.g., Fujikura Ltd.*, 2015 WL 5782351, at *7 (noting division). The cases that hold that Rule 4 is inapplicable are more persuasive and they are the only ones consistent with the Advisory Committee notes to the Rule. *See, e.g., SiteLock, LLC*, 338 F.R.D. 146 (surveying case law and concluding that Rule 4 service of subpoena on Canadian company was improper); *Viasat, Inc.*, 2014 WL 12577593, at *5 ("the Court declines to rely on a Rule 4 analysis in the context of service of a subpoena on a non-party foreign corporation."); *Fujikura Ltd.*, 2015 WL 5782351, at *6 (finding "general manager" service argument "unpersuasive").

Specifically, the *SiteLock* and *Viasat* courts cited the Advisory Committee Notes to the 1993 amendment to Rule 4, which state:

> *The Caption of the Rule.* Prior to this revision, Rule 4 was entitled "Process" and applied to the service of not only the summons but also other process as well, although these are not covered by the revised rule.... *Service of a subpoena is governed by Rule 45*, and service of papers such as orders, motions, notices, pleadings, and other documents is governed by Rule 5.
>
> *The revised rule is entitled "Summons" and applies only to that form of legal process.*

(*See* Fed. R. Civ. P. 4, Advisory Committee Notes - 1993 Amendments (emphasis added).) Thus, Rule 4 applies only to service of a *summons* and not service of other forms of legal process, including a subpoena under Rule 45.

Numerous cases are consistent with the Advisory Committee notes. *See, e.g., F.T.C. v. Compagnie De Saint-Gobain-Pontà-Mousson*, 636 F.2d 1300, 1311 (D.C. Cir. 1980) ("The distinction between service of notice and service of compulsory process is a crucial one under

---

United States. At least one court has indicated that a foreign company cannot be served with a subpoena under Rule 45. *See Viasat, Inc. v. Space Sys./Loral, LLC*, 2014 WL 12577593, at *5 (S.D. Cal. June 30, 2014) (a foreign corporation "is not a United States national or resident and therefore cannot be served with a subpoena under Rule 45.").

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

1   principles of both domestic and international law."); *Blumenthal Distrib., Inc. v. Herman Miller*,

2   Inc., 2015 WL 12778353, at *2 (C.D. Cal. Oct. 22, 2015) ("service of [a subpoena] is more

3   restricted than the methods of service available for a complaint [under Rule 4].").

4          The *SiteLock* court also noted that the leading treatise on federal procedure agrees. *See*

5   9A Charles H. Wright and Arthur R. Miller, *Fed. Prac. and Proc.* (Wright & Miller) § 2454 (3d

6   ed. April 2022 update) ("The longstanding interpretation of Rule 45 has been that personal

7   service of subpoenas is required.") *see also id*. at § 1062 ("Service of a subpoena is now

8   governed entirely by Rule 45…").  Wright & Miller characterize Netlist's position as a "minority

9   position."  (*Id*. at § 2454.)  For these reasons, Rule 4 is inapplicable to a Rule 45 subpoena, and

10  service on Montage CA is insufficient to properly serve Montage Shanghai.

11              **2.  The Court Lacks Personal Jurisdiction Over Montage Shanghai**

12         Even if service was proper, the court lacks personal jurisdiction over Montage Shanghai.[8]

13  Netlist erroneously contends that Montage Shanghai is subject to personal jurisdiction:

14  (1) because Montage CA is allegedly its alter ego; (2) based on the act of service; and (3) based

15  on Montage CA's contacts with California.  The "alter ego" test is a very high bar that Netlist

16  cannot clear.  The mere act of service itself cannot establish personal jurisdiction and Montage

17  CA's contacts are irrelevant since the parties are not alter egos.

18                   **a.   Jurisdiction based on alter-ego.**

19         Netlist has not presented any facts that establish that Montage CA is an "alter ego" of

20  Montage Shanghai.  Since *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Ninth Circuit has

21  held that "the alter ego test may be used to extend personal jurisdiction to a foreign parent or

22  subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate."

23  *Ranza v. Nike, Inc*., 793 F.3d 1059, 1073 (9th Cir. 2015); *Williams v. Yamaha Motor Co.*, 851

24  F.3d 1015, 1021-22 (9th Cir. 2017).  The "unity of interest" theory "envisions pervasive control

25  over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's

26

27         [8] A district court must have personal jurisdiction over a nonparty in order to compel it to
    comply with a valid discovery request under Rule 45.  *See, e.g., Gucci Am., Inc. v. Weixing Li*,
28  768 F.3d 122, 141 & n.20 (2d Cir. 2014) (collecting cases).

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

1  business — from broad policy decisions to routine matters of day-to-day operation." *Ranza*, 793

2  F.3d at 1073 (internal quotation marks and cite omitted).  "Thus, even when a parent corporation

3  is involved directly in decision-making about its subsidiary's holdings, but the entities still

4  observe the corporate formalities necessary to maintain corporate separateness, a plaintiff does

5  not meet the alter ego test." *Pokemon Co. Int'l, Inc. v. Shopify, Inc*., 2017 WL 697520, at *4

6  (N.D. Cal. Feb. 22, 2017) (denying motion to compel third party subpoena due to lack of

7  personal jurisdiction).

8         Disregarding the corporate form is an "extreme remedy" and courts will only pierce the

9  corporate veil in "exceptional circumstances." *See, e.g., Apple Inc. v. Allan & Assocs. Ltd*., 445

10  F. Supp. 3d 42, 52 (N.D. Cal. 2020); *Reynolds v. Binance Holdings Ltd*., 481 F. Supp. 3d 997,

11  1004 (N.D. Cal. 2020); *see also Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 807 (9th Cir.

12  2002) ("the alter ego rule is generally applied with caution").  To satisfy the alter ego test, a

13  plaintiff must make out a prima facie case:  (1) that there is such unity of interest and ownership

14  that the separate personalities of the two entities no longer exist, and (2) that failure to disregard

15  their separate identities would result in fraud or injustice. *See Ranza*, 793 F.3d at 1073; *see also*

16  *Williams*, 851 F.3d at 1021-22.

17         In this case, disregarding the corporate entity would be inappropriate.  The Service

18  Agreement governs the relationship between the two Montage entities, and it clearly states that

19  the parties are independent contractors and that they are not agents of each other.  (*See* Zhong

20  Decl., Ex. 31 (ECF 3-7) at Art. 19; *see also* Jin Decl., ¶ 4; Zhou Decl., ¶ 6.)  The entities are

21  separately incorporated, have different facilities, and most of the employees are different.  (*See*

22  Jin Decl., ¶ 3.)  Montage CA is responsible for its own day-to-day operations and corporate

23  formalities are maintained (*e.g*., funds are not co-mingled etc.).  (*Id.*, ¶ 4; Zhou Decl., ¶ 5.)

24  There is no allegation that the Montage entities fail to maintain corporate formalities.  In short,

25  the Montage parent-subsidiary relationship is a conventional one, not one that presents

26  "exceptional circumstances" of "pervasive control" that would justify the "extreme remedy" of

27  disregarding the corporate form.

28

1    As to Netlist's arguments to the contrary, it is well-established that common ownership

2    alone is insufficient to disregard the corporate form.  *See e.g., Stewart v. Screen Gems-EMI*

3    *Music, Inc.*, 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015).  Indeed, "100% control" by a parent

4    "does not by itself make a subsidiary the alter ego of the parent."  *Harris Rutsky & Co. Ins.*

5    *Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).  Nor are overlapping board

6    members enough, as courts generally presume that common directors can and do "change hats"

7    to represent each corporation separately.  *See id.*; *see also Apple Inc.*, 445 F. Supp. 3d at 53.  As

8    courts have noted, it is a normal attribute of ownership that officers and directors of the parent

9    serve as officers and directors of the subsidiary.  *See, e.g., Gerritsen v. Warner Bros. Ent. Inc.*,

10   116 F. Supp. 3d 1104, 1138–39 (C.D. Cal. 2015).

11   Netlist cites *NetApp, Inc. v. Nimble Storage, Inc.*, 2015 WL 400251 (N.D. Cal. Jan. 29,

12   2015), in support of a "marketing conduit" theory, but that case found the relationship there

13   insufficient.  Moreover, Netlist cites no Ninth Circuit authority for the "marketing conduit"

14   theory and the Ninth Circuit has indicated that the only agency-based theory that survived

15   *Daimler* is the alter ego theory.  *See Ranza*, 793 F.3d at 1073; *see also Williams*, 851 F.3d at

16   1022-25; *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co*., 2015 WL 4755335, at *5

17   (N.D. Cal. Aug. 11, 2015) (to the extent agency theory remains viable as to specific personal

18   jurisdiction, it operates like the alter ego test).  The Ninth Circuit noted that Supreme Court held

19   in *Daimler* that focusing on whether a subsidiary performs "important" work that the parent

20   would otherwise have to do itself "stacks the deck, for it will always yield a pro-jurisdiction

21   answer."  *Ranza*, 793 F.3d at 1073 (citing *Daimler*); *see also Williams*, 851 F.3d at 1024

22   (holding that *Daimler* "applies with equal force regardless of whether the standard is used to

23   establish general or specific jurisdiction").  The "marketing conduit" theory similarly "stacks the

24   deck," so it is also invalid under *Daimler*.

25   But even if the "marketing conduit" theory survived *Daimler*, it fails.  "[J]ust because

26   entities present themselves as 'one integrated company' for marketing purposes does not, on its

27   own, establish that companies are alter egos."  *Rojas v. Hamm*, 2019 WL 3779706, at *10 (N.D.

28   Cal. Aug. 12, 2019).  At best, Netlist contends that Montage Shanghai, "is active in

- 12 -

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

macromanagement issues," which is insufficient for an alter ego relationship. *Ranza*, 793 F.3d at 1075; *see also Apple Inc*., 445 F. Supp. 3d at 54-55 (finding that LinkedIn post "treat[ing]" two companies as same, and defendant's control over employee movement was "insufficient to show that Defendants [ ] 'dictated every facet'."). The *NetApp* court stated that "[f]or there to be alter ego reliability, there must be something more." *NetApp, Inc.*, 2015 WL 400251, at *8. "Shared administrative functions" such as those cited by Netlist, are "not necessarily indicative of an alter ego relationship." *Id*. at *7.[9]

Courts in this District have repeatedly declined to find jurisdiction in cases with far more convincing evidence. *See, e.g., Yih v. Taiwan Semiconductor Mfg. Co., Ltd*., 2020 WL 6290377 (N.D. Cal. Oct. 27, 2020), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co., Ltd*., 2021 WL 3783096 (9th Cir. Aug. 26, 2021) (no alter ego relationship where parent controlled pricing guidelines, subsidiary facilitated sales for parent, and companies shared website and email address domain, as well as common system for information and transactions); *Reynolds*, 481 F. Supp. 3d at 1005 (no alter ego relationship where parent and subsidiary shared some executives, operated on the same website using the same wallet technology, matching engine, and trading platform); *Corcoran v. CVS Health Corp*., 169 F. Supp. 3d 970, 983-84 (N.D. Cal. 2016) (no alter ego relationship where "evidence shows only that CVS Health wholly owns CVS Pharmacy, the two entities have overlapping officers and directors, CVS Health presents itself as one integrated company on its website and in government filings for marketing purposes, and CVS Health has been involved in discrete business decisions of CVS Pharmacy."); *Eclectic Properties E., LLC v. The Marcus & Millichap Co*., 2012 WL 713289, at *5, *17-18 (N.D. Cal. Mar. 5, 2012) (no alter ego relationship where companies shared same corporate headquarters, many employees, and marketing materials that referred to companies interchangeably).

---

[9] Courts also recognize that separate corporate entities presenting themselves as one online does not rise to the level of showing they are alter egos. *See, e.g., Payoda, Inc. v. Photon Infotech, Inc*., 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) (website "marketing puffery carries no weight in establishing whether a parent and its subsidiary are in fact alter egos"); *Moody v. Charming Shoppes of Delaware, Inc.*, 2008 WL 2128955, at *7 (N.D. Cal. May 20, 2008) ("Generic language on [company's] website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent.").

1    To disregard the corporate form, Netlist would also have to demonstrate "injustice." *See,*

2    *e.g., Williams*, 851 F.3d at 1021-22; *Ranza*, 793 F.3d at 1073.  Here, respecting the corporate

3    form would not cause any injustice, as there are established procedures for obtaining discovery

4    from foreign companies, including the Hague Evidence Convention.  As courts have noted,

5    parties should not skirt the rules "by serving a subsidiary of a foreign parent corporation on U.S.

6    soil" because international discovery conventions "would be entirely toothless for a large number

7    of global companies with U.S. subsidiaries." *Fujikura Ltd.,* 2015 WL 5782351, at *7.  Netlist

8    should have pursued this discovery via the Hague Evidence Convention, and the existence of that

9    procedure precludes a finding of "injustice."  Moreover, injustice typically requires bad faith,

10   which does not exist here.  *See, e.g*., *Reynolds*, 481 F. Supp. 3d at 1008.

11   Accordingly, Netlist cannot show that the Montage corporate relationships are anything

12   other than conventional, so it cannot show the "exceptional circumstances" that would justify the

13   "extreme remedy" of piercing the corporate veil.  Nor can it show "injustice."

14   **b.   Jurisdiction based on service.**

15   Netlist also suggests that it need not demonstrate personal jurisdiction, because service

16   was allegedly proper under Rule 4.  However, service and personal jurisdiction are separate

17   inquiries. *See, e.g., Halo Elecs., Inc. v. Bel Fuse Inc.*, 2010 WL 2605195, at *2, *6 (N.D. Cal.

18   June 28, 2010) (finding facts sufficient for valid service of foreign company but same facts

19   insufficient for personal jurisdiction).  Based on imprecise language in a few cases, Netlist

20   asserts that Fed. R. Civ. P. 45(c) somehow *creates* personal jurisdiction.[10]

21   However, that Rule, entitled "Place of Compliance," relates to where documents must be

22   produced, and depositions conducted.  Rule 45(c) does not purport to create personal jurisdiction

23   over non-resident foreign entities without conducting a personal jurisdiction analysis.  It is well-

24   established that "[f]or a court to exercise personal jurisdiction over a nonresident defendant, that

25   defendant must have at least 'minimum contacts' with the relevant forum such that the exercise

26   ───────────────

27   [10] As indicated below, Rule 45(c) requires that the place of compliance be within 100 miles of where the subpoenaed person resides.  Shanghai is far more than 100 miles from the Bay Area, so the subpoenas to Montage Shanghai do not comply with the Rule.  It would be

28   puzzling indeed if Rule 45(c) could create personal jurisdiction via non-compliance.

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

1    of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"

2    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004) (quoting *Int'l*

3    *Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316

4    (1945)).  Montage is not aware of case law supporting the notion that a court can enforce a

5    subpoena over a nonresident foreign entity without first establishing personal jurisdiction, as

6    such a procedure would violate due process.

7                          **c.  Contacts with California.**

8          Montage Shanghai itself lacks minimum contacts with California.  It does not conduct

9    business in California and is not licensed to conduct business in California.  (*See* Zhou Decl.,

10   ¶ 4.)  It has no physical presence in California.  (*Id.*)  That Montage Shanghai has a California

11   subsidiary does not establish minimum contacts because it is "well-established that a parent-

12   subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent

13   for jurisdictional purposes."  *Harris Rutsky*, 328 F.3d at 1134; *Pokemon Co. Int'l*, 2017 WL

14   697520 at *4.

15         For a court to have specific jurisdiction, a defendant's suit-related conduct must create a

16   substantial connection with the forum State and the relationship must arise out of contacts that

17   the defendant itself creates with the forum State.  *See Williams*, 851 F.3d at 1022.  A court can

18   exercise specific jurisdiction over a nonresident defendant only when three requirements are

19   satisfied:  (1) the defendant either "purposefully directs" its activities or "purposefully avails"

20   itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the

21   defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play

22   and substantial justice, *i.e.*, it is reasonable.  *See, e.g., Dole Food Co. v. Watts*, 303 F.3d 1104,

23   1111 (9th Cir. 2002).

24         Netlist's arguments generally relate to actions by Montage CA, not Montage Shanghai.

25   Since, as discussed above, Montage Shanghai and Montage CA are not alter egos, those

26   arguments miss the mark.  *See Apple Inc.*, 445 F. Supp. 3d at 56 ("Having held above that

27   Plaintiff has not demonstrated alter-ego liability, the Court declines to reengage in the identical

28   agency analysis.").  None of the Netlist arguments show that *Montage Shanghai* has

- 15 -

"purposefully availed" itself the privilege of conducting activities in California.  For example,

the supposed "branch" office is that of the subsidiary, Montage CA.  The supposed "sales" of

allegedly infringing products in California are alleged sales *by Samsung*, not by Montage

Shanghai.[11]  Moreover, the products at issue are placed in the stream of commerce and there is

no allegation that they were designed specifically for the California market.  *See Cf. Holland Am.*

*Line Inc. v. Wärtsilä N. Am., Inc*., 485 F.3d 450, 459 (9th Cir. 2007) ("The placement of a

product into the stream of commerce, without more, is not an act purposefully directed toward a

forum state.").[12]

Thus, these allegations are insufficient to show contacts by Montage Shanghai.  *See, e.g.,*

*Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1071 (9th Cir. 2017) ("It is well

established that, as a general rule, where a parent and a subsidiary are separate and distinct

corporate entities, the presence of one... in a forum state may not be attributed to the other.")

(citation omitted); *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 590 (9th

Cir. 1996) (despite subsidiary's presence in forum state, parent's contacts cannot support

personal jurisdiction where it conducts no business and maintains no offices in state).

The Ninth Circuit uses a "but for" test, under which a lawsuit arises out of a defendant's

contacts with the forum state if a direct nexus exists between those contacts and the cause of

action.  *See In re W. States Wholesale Nat. Gas Antitrust Litig*., 715 F.3d 716, 742 (9th Cir.

2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc*., 575 U.S. 373, 135 S. Ct. 1591, 191 L. Ed. 2d

---

[11] As additional examples, Exhibit 25 to Netlist's Motion is an online job posting for positions in both San Jose (for Montage CA) and Shanghai (for Montage Shanghai); Exhibit 32 indicates that Montage won supplier awards from Micron; and Exhibit 33 indicates that Montage CA supports activities of Montage Shanghai.  (*See* ECF Nos. 1-27, 1-34, 1-35).  Nor does participation in an international standard-setting organization such as JEDEC suggest activities specifically directed to California.  Indeed, none of these arise to the level of Montage Shanghai "purposefully" availing itself the privilege of conducting activities in California.

[12] The Ninth Circuit has held that a "mere web presence is insufficient to establish personal jurisdiction."  *Holland Am. Line*, 485 F.3d at 460 (citations omitted).  A website that "does not provide any direct means for purchasing parts or requesting services" but that "provides information on the various products manufactured … and redirects potential customers to the appropriate subsidiary" is a passive website that is not targeted at any state in particular.  *Id*.

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

511 (2015).  The subpoenas do not "arise out of" the alleged contacts with California, as they relate to alleged infringement by Samsung (a South Korean company) being litigated in Texas. The Montage components were not designed or engineered in California, nor did any Montage transactions with Samsung occur in California (*see* Zhou Decl., ¶ 11), as they occurred abroad. *See Pokemon Co. Int'l*, 2017 WL 697520 at *4 (analyzing personal jurisdiction as to third party subpoena and finding no jurisdiction).

Because Montage Shanghai has no meaningful contacts with California and there are established international procedures (*e.g.*, the Hague Evidence Convention) for obtaining discovery from foreign companies, exercising personal jurisdiction over Montage Shanghai would also be unreasonable.  Indeed, this discovery should have been conducted via the Hague Evidence Convention from the start.  Moreover, Chinese law may preclude Montage Shanghai from complying with discovery requests that are not sought via the Hague Evidence Convention. (*See* Zhou Decl., ¶ 18; Bartlett Decl., Ex. I.)  Specifically, Article 284 of the Chinese Civil Procedure Law (formerly Article 277) may require that discovery requests be made via international treaty or diplomatic channels.  *See Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, 2019 WL 6134958, at *2 (N.D. Cal. Nov. 19, 2019) ("the Court finds that Defendant has demonstrated that producing documents located in the PRC in response to Plaintiff's discovery requests would violate Article 277.").  Montage Shanghai would also have to determine its obligations under other Chinese laws, including the Export Control law, which might include applying for certain license(s) from the Chinese government.  (*See* Zhou Decl., ¶ 18.)

**3.    Subpoenas to Montage Shanghai Are Also Facially Defective Because They Purport to Compel Production Beyond the Geographical Limits of Rule 45(c)**

The subpoenas to Montage Shanghai purport to compel for compliance in the Bay Area, approximately 6,000 miles from Shanghai.  (*See* Zhong Decl., Exs. 9, 10 (ECF Nos. 1-11, 1-12).) This is far more than the 100 miles permitted by Rule 45(c).  *See* Fed. R. Civ. P. 45(c); *Uniloc USA, Inc. v. Apple Inc.*, 2020 WL 6262349, at *2 (N.D. Cal. Oct. 23, 2020) ("a subpoena that purports to compel production beyond the geographical limits specified in Rule 45(c) does not

- 17 -

comply with the requirements of the Rule"); *Dhillon v. Does 1-10*, 2013 WL 12144121, at *1 (N.D. Cal. July 21, 2013) ("Nonparties cannot be required to produce documents at a location more than 100 miles from their home or business.").  Netlist attempts to conflate the Montage entities, but the company it subpoenaed is in Shanghai and any witnesses would also be in China.  Thus, the subpoenas are facially defective, which independently resolves all issues regarding the subpoenas to Montage Shanghai.

## C.    Montage CA Has Produced the Technical Documents in Its Possession

The technical documents possessed by Montage CA are non-confidential product flyers and confidential datasheets and they have been produced.  (*See* Jin Decl., ¶¶ 10-11.)  Additional technical details, including source code, are considered proprietary by Montage Shanghai and are not shared with Montage CA.  (*Id.*, ¶¶ 6, 19; Zhou Decl., ¶¶ 12, 16-17.)  Specifically, source code is maintained on servers in Shanghai and only specific Montage Shanghai employees have access to it.  (*Id.*, ¶ 17.)

Under Ninth Circuit law, "control" is defined as "the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (citation omitted) (affirming finding that subsidiary did not possess or control documents of parent).  Montage CA does not possess code, nor does it have the legal right to obtain it on demand, as it is an independent contractor that is not granted that right by the Service Agreement.  (*See* Zhou Decl., Ex. 31 at Art. 19; Jin Decl., ¶ 4; Zhou Decl., ¶¶ 5-6.)  Montage entities share some marketing and related materials, but they do not share source code and the other technical information sought by Netlist.  (*See* Jin Decl., ¶ 19; Zhou Decl., ¶ 9.)  Although Netlist cites the governing "legal right" test, none of its alleged facts are directed whether Montage CA has a legal right to demand documents from Montage Shanghai, because no such right exists.

Accordingly, Montage CA does not possess or control source code or other detailed technical documents of Montage Shanghai.  *See, e.g., M.G. v. Bodum USA, Inc.,* 2020 WL 1667410 (N.D. Cal. Apr. 3, 2020) (finding subsidiary did not possess or control documents of parent); *Dugan v. Lloyds TSB Bank, PLC*, 2013 WL 4758055 (N.D. Cal. Sept. 4, 2013) (same); *Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, 2011 WL 5373759 (N.D. Cal. Nov. 7,

- 18 -

1    2011) (same); *Hambrecht Wine Grp., L.P. v. Millennium Imp. LLC*, 2006 WL 3302428 (N.D.

2    Cal. Nov. 14, 2006) (same).  Additionally, as demonstrated above, Montage CA is not an alter

3    ego of Montage Shanghai.

4            To be clear, the datasheets already provided to Netlist contain extraordinarily detailed

5    descriptions of the Montage products.  Each confidential datasheet is 180-300 pages and contains

6    comprehensive technical information regarding each product, including compliance with JEDEC

7    specifications.  For example, the datasheet for the "DDR4 Registering Clock Driver

8    M88DR4RCD02P" is 260 pages, and it includes diagrams, pin information, detailed functional

9    descriptions, interface information, register descriptions, electrical specifications, timing

10   information, and mechanical package details.  (*See* Bartlett Decl., Ex. B.)  It contains 88 figures

11   and 226 tables.  (*See id.*)  Thus, Montage CA has complied with the requests, and the already-

12   produced documents constitute its technical understanding of the products for purposes of the

13   deposition subpoena.

14           **D.      The Subpoenas Seek Trade Secrets and Netlist Has Not Demonstrated**
                       **"Substantial Need" for Additional Information**
15

16           All the subpoenas are directed to Montage trade secrets, as they seek confidential

17   technical information, including source code.  Trade secrets or confidential business information

18   includes "important proprietary information" or information that the nonparty has historically

19   sought to maintain confidential.  *Compaq Computer Corp.*, 163 F.R.D. at 338.  The requested

20   information is confidential and is not disclosed to third parties at all or is disclosed pursuant to an

21   NDA.  (*See* Jin Decl., ¶¶ 7, 16-18.)  Montage technical information is a trade secret, as it is

22   maintained as confidential, and disclosure would cause competitive harm.  *See, e.g., GreenCycle*

23   *Paint, Inc. v. PaintCare, Inc.*, 2018 WL 1399865 (N.D. Cal. Mar. 19, 2018); *Compaq Computer*

24   *Corp.*, 163 F.R.D. at 338.  As such, the requests seek trade secrets within the meaning of Fed. R.

25   Civ. P. 45(d)(3)(B)(i).  In particular, source code is highly confidential, as it is extremely

26   valuable to Montage and is not disclosed to the public or even to Montage customers.  (*See* Zhou

27   Decl., ¶¶ 16-17; *see also Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 2012 WL 6115623, at *2 (N.D.

28   Cal. Dec. 10, 2012) ("Confidential source code clearly meets the definition of a trade secret.");

- 19 -

1    *In re Koninklijke Philips Pat. Litig.*, 2020 WL 1865294 (N.D. Cal. Apr. 13, 2020) (source code

2    qualifies as trade secret).)

3         Because the requested information constitutes trade secrets, Netlist must show

4    "substantial need" for such documents. *See, e.g., In Re Apple*, 2020 WL 5993223 at *3; *see also*

5    *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439 (N.D. Cal. July 7, 2017) (granting motion

6    to quash third party subpoena). Determining "substantial need" requires considering the

7    "relevance and importance of the material sought, as well as the availability of facts from other

8    sources." *In Re Apple*, 2020 WL 5993223 at *3 (citation omitted). Netlist has not attempted to

9    meet this standard. Moreover, Netlist has not specifically identified the source code it seeks and

10   even if it was relevant, Netlist could only potentially demonstrate "substantial need" as to code

11   regarding some *specific* functionality. It would not be entitled to *all* Montage source code, only

12   the snippets that were relevant. Identifying such source code would be time-consuming and

13   burdensome for Montage. (*See* Zhou Decl., ¶ 17.)

14        Despite numerous requests, Netlist refused to provide *anything* about availability of

15   technical information from other sources, particularly Samsung or JEDEC.[13] Nor has it

16   explained the supposed importance of any *additional* requested information, above and beyond

17   what has already been produced by Montage (and Samsung). Montage repeatedly requested

18   infringement contentions to evaluate the alleged relevance, but those were never provided.

19   Although Netlist included *excerpts* from its contentions with this Motion, *all the substantive*

20   *material has been excluded*. (*See* Zhong Decl., Ex. 12 (ECF No. 1-14).) There is no way for the

21   Court or Montage to assess whether the requested material is relevant, let alone whether there is

22   a "substantial need" for it, particularly since fact discovery has closed and expert reports have

23   been served.

24   _____

25        [13] Although Netlist suggests that the requested information is relevant because of its
     characterization of a curated collection of communications with Samsung, none of those

26   communications specifically address Montage. Nor do any of them suggest the individual or
     collective insufficiency of: (1) the datasheets produced by Montage, (2) the documents produced

27   by Samsung, and/or (3) the JEDEC specifications. Further, nothing in those communications
     suggests that Montage source code is relevant or that equivalent information cannot be obtained

28   from other documents or sources.

DEFENDANTS' OPPOSITION TO NETLIST INC.'S MOTION TO COMPEL

The closest Netlist has come to addressing "substantial need" was for documents relating to certain "tristate buffers," "input signals," and "latency parameters."  (*See* Zhong Decl., Ex. 19 (ECF No. 3-4).)  However, Montage has already produced substantial information regarding these topics in the form of data sheets.  (*See id*., Ex. 20 (ECF No. 3-5).)  For example, the "tristate buffers" are described in the data sheets and "latency parameters" are described in multiple figures.  Moreover, Netlist's citations to asserted claims did not support its relevance assertions.  Netlist seeks information related to the specific "amount of delay" that is provided to a "delay circuit."  However, the claim cited is directed to "a first predetermined amount" of delay, but that amount is not specified.  The only requirement appears to be that it be "predetermined."  (*Id*.)  Netlist never responded to the Montage letter identifying the relevant information in the datasheets.  Thus, even Netlist's cherry-picked relevance arguments are unconvincing.[14]

Montage CA does not possess additional technical documents, but even if there were some, Netlist has not demonstrated "substantial need" because it has not shown that the information (or equivalent information) is unavailable from Samsung or that the requested information would be important.  *See, e.g., In Re Apple*, 2020 WL 5993223 at *3 ("Determining 'substantial need' requires taking into account the relevance and importance of the material sought, as well as the availability of facts from other sources.").  Moreover, because this is a standards case, Netlist has not demonstrated that the information cannot be obtained from the JEDEC specifications themselves.  *See, e.g., Fujitsu Ltd.*, 620 F.3d at 1327 (standards documents sufficient to prove infringement by standard-compliant products).

---

[14] For most requests, Netlist breezily labels the information it seeks as "critical" or "directly relevant" but does not actually explain the supposed relevance, let alone tie it to a claim or an infringement issue.  This is insufficient.  *See, e.g., AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-CV-03393-YGR JSC, 2014 WL 6706873, at *3 (N.D. Cal. Nov. 25, 2014) ("Defendants' conclusory statements regarding the relevance of the documents sought fail to satisfy their burden to demonstrate relevance.").

1

### IV.  SANCTIONS

2         Rule states 45(d)(1) states that a court "must enforce" the duty to avoid imposing undue

3    costs on third parties by sanctioning a party that fails to comply.  As indicated above, Netlist's

4    Motion fails to comply with the local rules and disregards the relevant case law cited during the

5    meet and confer.  The Motion was also filed too late for the requested information to be of use in

6    the underlying case and the requests were overbroad and unduly burdensome.  Moreover, the

7    subpoenas to Montage Shanghai are facially noncompliant, as they require compliance 6,000

8    miles from Shanghai.  Accordingly, if the Motion is denied, Montage believes it should be

9    allowed to seek its fees associated with the Motion.  *See In re NCAA Student-Athlete Name &*

10   *Likeness Licensing Litig.*, 2012 WL 629225 (N.D. Cal. Feb. 27, 2012) (imposing sanctions);

11   *LegalZoom.com v. Rocket Law. Inc.*, 2015 WL 12832823 (N.D. Cal. Mar. 23, 2015) (same).

12   ### V. CONCLUSION

13        For the foregoing reasons, the Motion should be denied in its entirety.  Montage CA has

14   complied with the subpoenas and does not possess additional information.  The subpoenas to

15   Montage Shanghai are defective and it has not been properly served, nor is it subject to personal

16   jurisdiction in this Court.  Moreover, because fact discovery has closed and expert reports have

17   been served, it is too late for the requested information to be useful.

18

19   Dated: January 10, 2023                    Respectfully submitted,

20                                              MAURIEL KAPOUYTIAN WOODS LLP

21                                              By:    */s/ Jason R. Bartlett*
                                                       Jason R. Bartlett
22                                                     Jason A. Crotty

23                                              *Attorneys for Defendants*

24

25

26

27

28