IRELL & MANELLA LLP
Jason G. Sheasby (CA SBN 205455)
jsheasby@irell.com
Hong (Annita) Zhong (CA SBN 266924)
hzhong@irell.com
Yanan Zhao (CA SBN 337864)
yzhao@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MONTAGE TECHNOLOGY, INC. AND MONTAGE TECHNOLOGY CO., LTD.,<br><br>Defendant. | Case No. 5:22-mc-80337-VKD<br><br>Pending in: The United States District Court for the Eastern District of Texas, Marshall Division No. 2:21-cv-463-JRG<br><br>Hearing Date: January 31, 2023<br>Time:  10:00 AM PT<br>Magistrate Judge Virginia K. DeMarchi |

**PLAINTIFF NETLIST, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE OF SUBPOENA BY MONTAGE TECHNOLOGY, INC. AND MONTAGE TECHNOLOGY CO., LTD.**

# TABLE OF CONTENTS

Page

I.   NETLIST COMPLIED WITH L.R. 37-2 ............................................................................1

II.  NETLIST HAS A SUBSTANTIAL NEED FOR THE REQUESTED
     INFORMATION ............................................................................................................2

     A.  Netlist's Requests Are Relevant ........................................................................2

     B.  The Requested Information Is Not Available From Samsung ..............................3

     C.  The Requested Information Is Not Contained in Montage CA's
         Production or the JEDEC Specifications ............................................................4

     D.  Netlist's Narrowed List of Requests Reduce the Burden on Montage ..................6

     E.  Montage Cannot Show an Undue Burden Caused by Complying
         with the Subpoena ............................................................................................6

     F.  The Protective Order Is Sufficient to Protect Montage's Confidential
         Information ......................................................................................................7

III. THE SUBPOENAS ON MONTAGE SHANGHAI WERE PROPERLY
     SERVED ........................................................................................................................8

     A.  Netlist Personally Served the Subpoenas On Montage Through Its
         CA Agent. ........................................................................................................8

     B.  Montage's Arguments Regarding Rule 4 Are Inconsistent with This
         District's Case Law ..........................................................................................9

     C.  Netlist Seeks Compliance Within 100 Miles of Montage CA's
         Office, Where Montage Regularly Conducts Business ......................................11

IV.  THIS COURT HAS PERSONAL JURISDICTION OVER MONTAGE ......................12

     A.  This Court Has Personal Jurisdiction over Netlist's Enforcement
         Action for Subpoenas Served on Montage Shanghai through Its
         General Manager ............................................................................................12

     B.  Montage Does Not Address Its Contacts with Montage CA ..............................13

V.   MONTAGE'S SANCTIONS REQUEST IS INAPPROPRIATE ..................................14

VI.  CONCLUSION ............................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

**Cases**

4

*In re Apple Inc. Securities Litig.*,
  No. 4:19-cv-2033, Dkt. 141 (N.D. Cal. Mar. 6, 2021).............................................................. 2

5

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
  2015 WL 12778353 (C.D. Cal. Oct. 22, 2015)....................................................................... 10

6

*City of Roseville Employees' Ret. Sys. v. Apple Inc.*,
  2021 WL 1176641 (N.D. Cal. Mar. 19, 2021) ............................................................... *passim*

7

8

*Corp. v. Hydro-Air Eng'g, Inc.*,
  813 F.2d 1207 (Fed. Cir. 1987) ............................................................................................... 3

9

10

*Dhillon v. Does 1-10*,
  2013 WL 12144121 (N.D. Cal. July 21, 2013) ...................................................................... 12

11

*F.T.C. v. Compagnie De Saint-Gobain-Pontà-Mousson*,
  636 F.2d 1300 (D.C. Cir. 1980) ............................................................................................. 10

12

13

*Fujikura Ltd. v. Finisar Corp.*
  2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ....................................................................10, 16

14

*Halo Elecs. Inc.v. Bel Fuse Inc.*,
  2010 WL 2605195 (N.D. Cal. June 28, 2010)........................................................................ 13

15

16

*Handloser v. HCL Am., Inc.*,
  2020 WL 4700989 (N.D. Cal. Aug. 13, 2020) ......................................................................... 8

17

18

*Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*,
  2017 WL 4619791 (E.D. Tex. Oct. 16, 2017) .......................................................................... 7

19

*LegalZoom.com v. Rocket Law. Inc.*,
  2015 WL 12832823 (N.D. Cal. Mar. 23, 2015) ................................................................15, 16

20

21

*Meneweather v. Powell*,
  2012 WL 12995648 (N.D. Cal. Apr. 4, 2012).......................................................................... 3

22

23

*MGA Ent., Inc. v. Nat'l Prods., Ltd.*,
  2011 WL 13130709 (C.D. Cal. Dec. 20, 2011) ..................................................................... 10

24

*Microsoft Corp. v. Hon Hai Prec. Ind. Co., Ltd.*,
  2020 WL 8991669 (N.D. Cal. Feb. 12, 2020) ...................................................................... 6, 7

25

26

*Montgomery v. Risen*,
  2015 WL 12672825 (S.D. Cal. Nov. 5, 2015)........................................................................ 12

27

28

*Mount Hope Church v. Bash Back!*,
   705 F.3d 418 (9th Cir. 2012) ............................................................... 15

*NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   2012 WL 629225 (N.D. Cal. Feb. 27, 2012) ......................................... 15

*Paisley Park Enters., Inc. v. Boxill*,
   2019 WL 1036059 (D. Minn. Mar. 5, 2019) ......................................... 10

*In re PersonalWeb Techs., LLC*,
   2019 WL 1975432 (N.D. Cal. Feb. 6, 2019) ............................................ 9

*Pokemon Co. Int'l, Inc. v. Shopify, Inc.*,
   2017 WL 697520 (N.D. Cal. Feb. 22, 2017) ......................................... 14

*Regents of Univ. of Cal. v. Kohne*,
   166 F.R.D. 463 (S.D. Cal. 1996) ......................................................... 13

*Rich v. Butowsky*,
   2020 WL 5910069 (N.D. Cal. Oct. 6, 2020) ............................................ 8

*Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*,
   2018 WL 2387580 (S.D. Cal. May 24, 2018) ....................................... 10

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ............................................................... 13

*SiteLock, LLC v. GoDaddy.com, LLC*,
   338 F.R.D. 146 (D. Or. 2021) ................................................................. 9

*Smith v Frank*,
   923 F.2d 139 (9th. Cir. 1991) ................................................................. 2

*In re Subpoena to Dunhuang Grp.*,
   2019 WL 2150947 (E.D. Mich. May 17, 2019) ..................................... 10

*Uniloc USA, Inc. v. Apple Inc.*,
   2020 WL 6262349 (N.D. Cal. Oct. 23, 2020) ....................................... 12

*Viasat, Inc. v. Space Sys./Loral, LLC*,
   2014 WL 12577593 (S.D. Cal. June 30, 2014) ........................................ 9

*World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of New York, Inc*,
   2011 WL 5118525 (N.D. Cal. Oct. 28, 2011) .......................................... 9

*Wultz v. Bank of China*,
   298 F.R.D. 91 (S.D.N.Y. 2014) .......................................................12, 13

**Rules**

Fed. R. Civ. P. 4 ................................................................................................9, 10, 11

Fed. R. Civ. P. 26(b)(2) ....................................................................................... 2

Fed. R. Civ. P. 45 ......................................................................................... *passim*

L.R. 7-3(c)-(d) ...................................................................................................... 9

L.R. 37-2 .......................................................................................................... 1, 2

Montage fails to raise proper objections to Netlist's motion to compel deposition on the specific questions it provided in Exhibit 24. Montage does not dispute that Montage CA is the general manager of Montage Shanghai. Netlist properly served its subpoenas on Montage Shanghai through Montage CA, and this Court has proper jurisdiction to enforce the subpoenas. *See City of Roseville Employees' Ret. Sys. v. Apple Inc.*, 2021 WL 1176641, *13 (N.D. Cal. Mar. 19, 2021).

Before filing this instant Action, Netlist made reasonable efforts to minimize the burden on Montage, including by limiting its request to a 5-hour deposition of Montage engineer(s) on the specific questions Netlist provided relating to the operation and function of Montage components used in the accused instrumentalities in the underlying patent infringement action. *See* Ex. 1. Netlist repeatedly sought, but could not acquire, information regarding the operation of Montage's products from parties in the infringement action. *See* Zhong Decl. at 1; Dkt. 1-19 (2022-07-18 Samsung Email) ("We also point out, as you should be well aware, most of the relevant components implicated by Netlist's contentions are third party components."). As early as August 18, 2022, Netlist provided Montage with a list of its patent claims asserted in the patent infringement action and explained why the datasheets and JEDEC specifications identified by Montage are insufficient to answer the subpoena requests. Dkt. 1-21. Neither Montage entity disputed the relevance of the requested information. Montage must be compelled to comply with the subpoena and provide a witness to testify as to the questions listed in Netlist's Exhibit 24.

## I.      NETLIST COMPLIED WITH L.R. 37-2

As an initial matter, Montage's argument that Netlist did not comply with Rule 37-2 is baseless. Netlist attached a copy of the relevant subpoenas to its motion to compel (Dkt. 1-11, 1-12), and also set forth each of its narrowed requests in full in Ex. 24. In its Motion, Netlist asked that Montage "be compelled to provide witness(es) to attend deposition as to topics and questions identified in Ex. 24." Dkt. 1 at 19.

Montage Technology Co. Ltd. ("Montage Shanghai" or "Montage") has not provided formal responses or objections to these requests, so there were no "objections and/or responses" to submit. Indeed, Montage took the position that it was not obligated to provide written responses because service was supposedly improper in a letter—which Netlist submitted with its Motion. Dkt. 1-23 at

3 (2022-10-20 Ltr. from Montage) ("Because the subpoenas have not been properly served, there is no need for Montage [Shanghai] to provide written responses or objections, but it reserves its right to do so in the unlikely event that Netlist can show that service is proper.").

Further, neither Montage entity disputed the relevance of the specific questions Netlist has requested before Netlist filed this Motion. Indeed, the questions identified in Ex. 24 fall squarely within Topics 3-4, 9 (operation and advantages of the products), and Topic 16 (compliance/non-compliance with the JEDEC specifications) of the October 5 deposition subpoena on Montage. Dkt. 1-11, 1-12. Montage Shanghai never served any written objections other than disputing the service issue. The objections from Montage CA do not contain relevance objections to these topics but instead object to the production of source code generally. Moreover, in its letter responding to Netlist's earlier explanation of why its production was not sufficient, Montage CA ███████████ ██████████████████████████████████████████████████. Dkt. 1-22 at 3-6.

Finally, as the Ninth Circuit explained, district courts have broad discretion in applying local rules and providing parties with a "reasonable … opportunity to conform to the local rules." *Smith v Frank*, 923 F.2d 139, 142 (9th. Cir. 1991). Courts in this District have granted motions to compel in similar cases where the opening brief did not cite to L.R. 37-2 or provide the requests and corresponding objections in the text of the brief. *E.g., In re Apple Inc. Securities Litig.*, No. 4:19-cv-2033, Dkt. 141 at 6 (N.D. Cal. Mar. 6, 2021) (describing generally the documents sought in subpoena); Dkt. 152 (granting motion to compel). In *in re Apple*, the crux of the dispute was similarly *not* about the relevancy of the requested documents or the burden on the defendant, but rather about whether the plaintiff properly served the foreign defendant and whether the defendant was subject to personal jurisdiction. *Id.* Netlist provided in detail Montage's objections on these grounds, and provided its contrary arguments, along with its argument that the requirements of Fed. R. Civ. P. 26(b)(2) are satisfied. Dkt. 1 at 8-9. Thus, Netlist has complied with L.R. 37-2.

## II.     NETLIST HAS A SUBSTANTIAL NEED FOR THE REQUESTED INFORMATION

### A.     Netlist's Requests Are Relevant

Montage's attempt to argue now that the information sought by Netlist is not relevant is

1   unpersuasive. "The question of relevancy [for a Rule 45 subpoena] should be construed liberally
2   and with common sense." *Meneweather v. Powell*, 2012 WL 12995648, at *2 (N.D. Cal. Apr. 4,
3   2012) (internal quotation omitted).

4          Contrary to Montage's suggestion, Netlist has demonstrated a substantial need for the
5   requested information by providing explanations on the relevance and importance of Netlist's
6   requests to the underlying litigation and explaining why this information is not available from other
7   sources. By way of example, in its letter to Montage CA on August 18, 2022, Netlist explained:



12  Dkt. 1-21 at 2-3; *see generally* Mtn at 8-9 (listing features relevant to Netlist's claims). Montage
13  has also not explained how or why it finds the questions provided by Netlist irrelevant or
14  unimportant to the underlying litigation. *See Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d
15  1207, 1211–12 (Fed. Cir. 1987) ("where relevance is in doubt, the rule indicates that the court should
16  be permissive"). In fact, Netlist sought and received the same type of information from another
17  third-party supplier who provided a witness for deposition. That fact should settle the relevance of
18  the request. Ex. 3 (subpoena on Renesas); Ex. 4 (confirmation of Renesas on witness availability).[1]

19          **B.      The Requested Information Is Not Available From Samsung**

20          Montage next asserts that Netlist has failed to show that Netlist cannot obtain the requested
21  information from Samsung. Opp. at 20. But this is simply not true. As detailed in Netlist's motion,
22  Samsung made it clear that the details of the circuit level operation—i.e. those demonstrated in
23  source code materials—are not in Samsung's possession, but in the third parties. Dkt. 1-1 at 1 ("For
24  the DDR4 and DDR5 products, nearly all relevant code is in the possession of third parties, and
25  Samsung does not have access to the code."); Dkt. 1-19 (Samsung Email) ("We also point out, as

26

27          [1] Netlist provided a question list to Renesas, which contains Renesas' confidential
28  information. If the court deems necessary, Netlist can provide such question list for an in camera
    review.

1  you should be well aware, most of the relevant components implicated by Netlist's contentions are

2  third party components."). Montage's argument that Samsung did not "specifically address

3  Montage" does not hold water. Netlist's communications with Samsung specifically addressed third

4  party suppliers of the components of Samsung accused products, and Montage does not deny that it

5  is one of those suppliers. More importantly, Montage does not assert—let alone provide evidence—

6  that it ever shared detailed circuit-level operation information of its products with Samsung.

7  **C.      The Requested Information Is Not Contained in Montage CA's Production or
          the JEDEC Specifications**

8

9         Montage's attempt to point to JEDEC Specifications or to the documents Montage CA

10  produced is similarly flawed. For example, Montage contends its datasheet disclosed certain

11  information about "tristate buffers," "input signals," and "latency parameters." Opp. at 21. However,

12  simply referring to these items in its datasheets does not mean Montage's document production

13  provided sufficient details showing how these components operate and function, particularly as to

14  those key features relevant to Netlist's asserted claims. Instead, Netlist has explained in detail why

15  these datasheets are insufficient. Dkt. 1 at 5-6, Dkt. 1-21.



25  As another example, Netlist explained:

1

2

3

4

5

6

7  *Id.* at 4. This also directly contradicts Montage's contention that Netlist's infringement case against

8  Samsung is a "standard case" and its unfounded assertion that Netlist "has refused to provide

9  *anything* about availability of technical information from other sources, particularly Samsung and

10  JEDEC." Opp. at 20.

11  [2] For example:

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Montage never disputed—as it cannot—that the specific questions Netlist asked are relevant but not

26  ───────────────
    [2] Montage also argues that it did not have Netlist's infringement contentions in the patent
27  infringement action. Opp. at 20. However, Montage omitted the fact that as early as August 18,
    2022, Netlist provided it with a list of its asserted claims in the patent infringement action, on an
    element-by-element basis, which demonstrated the relevance of Netlist's requests. Dkt. 1-4; Dkt.
28  1-21 (comparing information Netlist seeks with the claim list Netlist shared with Montage).

answered by Montage's document production or JEDEC specifications.

**D.      Netlist's Narrowed List of Requests Reduce the Burden on Montage**

The list of questions Netlist moves to compel on clearly reflects a good-faith effort by Netlist to narrow its discovery requests as much as possible to ease any burden on Montage. As explained above, the requests in Ex. 24 are narrower, more specific iterations of Netlist's previous requested Topics 3-4, 9, and 16. Thus, the list provided by Netlist does not "hinder[] the ability of Montage to respond and the Court to assess the alleged discoverability of the requested information," Opp. at 8, but rather, reduces the overall burden on Montage as much as possible. Netlist explained in its correspondence with Montage and in its Motion that this list reflects Netlist's effort to "further narrow[] the scope of its discovery requests." Mot. at 8; Ex. 1 at 3 (2022-12-20 Netlist Email to Montage) ("To focus the scope of our request and make it easier to prepare a witness, here attached is a more detailed list of issues that we would like to question a Montage witness on.").

The list was "disclosed to Montage . . . just before Netlist's Motion was filed" because Netlist provided this substantially narrowed list as a final effort to avoid motion practice and negotiate in good faith. As part of this effort, Netlist also offered to cap a deposition on these questions to a 5-hour remote deposition, accommodate a deposition in Chinese, and "accommodate the witness's schedule." Ex. 1. Montage rejected Netlist's efforts, offering only a witness to authenticate the documents and confirm Montage's components complied with JEDEC standards, which Netlist had already repeatedly explained was not sufficient to respond to its requests. *Id.* at 1-2. It is common, and indeed encouraged, for parties to confer and negotiate in good faith before resorting to motion practice. Netlist should not be punished for its effort to resolve the parties' discovery disputes without the court's intervention by requesting *less* from Montage than in its original subpoenas.

**E.      Montage Cannot Show an Undue Burden Caused by Complying with the Subpoena**

"When making a determination as to whether document production is protected from disclosure under Chinese or any other foreign law, it is important to note that [t]he party relying on foreign law has the burden of showing such law bars production [of documents or information]." *Microsoft Corp. v. Hon Hai Prec. Ind. Co., Ltd.*, 2020 WL 8991669, at *4 (N.D. Cal. Feb. 12, 2020).

Montage cannot carry out its burden to allege specific facts demonstrating the burden presented by Netlist's requests. Netlist has provided multiple avenues for Montage to comply—either producing relevant source code or a brief deposition on the narrow questions provided in Ex. 24. But Montage refused to offer *any* flexibility or negotiate on potential production. *See supra* I.B.

Montage also argues that it would be burdensome to identify the specific source code and that it would need permission from the Chinese authorities to provide such information, but it fails to explain why a remote deposition on Netlist's narrow list of questions would be burdensome. Opp. at 20.  Montage's claims about what Chinese law "may" require do not rise to the level of certainty required to show that the cited laws should preclude enforcement of the subpoena. Opp. at 17*; see Microsoft*, 2020 WL 8991669, at *4 (finding the party "has not met its burden to excuse its noncompliance with the… discovery order based on foreign law" because it "has not established that foreign law actually bars disclosure of the . . . specific documents and information at issue").

Finally, Montage suggests that Netlist's motion to compel is too late. That is simply not true. Netlist noticed Montage of its intent to file the motion before the fact discovery of the patent infringement action closed. The motion was also filed on December 21, before the deadline for motions to compel as set in the scheduling order in the patent infringement action. Dkt. 1-15 at 4 (deadline to file motions to compel discovery is set for December 22, 2022). That Netlist has already served its infringement expert report is of no moment. Additional discovery from Montage would still be useable at trial (which is scheduled for May 2023), and the Eastern District of Texas routinely grants leave for parties to supplement expert reports based on discovery produced after the fact discovery/expert deadline. *E.g. Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, 2017 WL 4619791, at *4 (E.D. Tex. Oct. 16, 2017) (granting leave to supplement reports with information produced after discovery deadline). In fact, both parties in the underlying action have filed discovery motions which are set to be heard by Judge Gilstrap on January 19, 2023. Tex. Action, Dkt. 165. And, in the event the Court grants Netlist's motion and leave was needed to take Montage's deposition (which it is not), the E.D. Tex. Court has routinely granted such requests.

**F.**     **The Protective Order Is Sufficient to Protect Montage's Confidential Information**

To the extent Montage contends that it is overly risky for it to produce confidential information, Opp. 19, that argument lacks merit because it has not explained why the Protective Order in the underlying patent infringement case would not be sufficient to protect Montage's confidential information. *See Rich v. Butowsky*, 2020 WL 5910069, at *4 (N.D. Cal. Oct. 6, 2020) (denying motion to quash subpoena because "the Protective Order provides adequate safeguards" for the confidentiality concerns of the defendant); *Handloser v. HCL Am., Inc.*, 2020 WL 4700989, at *4 (N.D. Cal. Aug. 13, 2020) ("to address [a party's] concerns about confidentiality, plaintiffs proposed that [they] could designate any unreviewed portion of its document production as highly confidential under the protective order. These efforts are precisely what Rule 45 requires."). Indeed, Netlist provided the protective order in connection with its subpoenas but Montage never raised any objections to the protective order in place in the patent infringement action or alleged that it would not provide sufficient protection.

## III.    THE SUBPOENAS ON MONTAGE SHANGHAI WERE PROPERLY SERVED

Montage's arguments regarding service ignore the factual record as well as the case law from this District. Because the subpoena was personally served on Montage Shanghai's general manager, Montage CA, service was proper and the subpoena is enforceable.

### A.    Netlist Personally Served the Subpoenas On Montage Through Its CA Agent.[3]

Netlist personally served the October 5 subpoenas on Montage CA through its registered agent for service, Sherry Shi. Ex. 2 (signed proof of service). Neither Montage nor Montage CA disputed that fact in the parties' written responses or other meet-and-confers. Indeed, Montage's counsel reached out to Netlist on October 20, 2022, stating:

> We are in receipt of two subpoenas purportedly directed to Montage Technology Co., Ltd. by way of service on a subsidiary, Montage Technology, Inc.

Dkt. 1-23 at 1 (Barlett ltr.). Netlist does not have to prove its personal service because Montage never disputed that fact and admitted the receipt of service. *Id*. But out of an abundance of caution, Netlist hereby submits the signed proof of service by the server. Ex. 2 (signed proof of service).

Montage attempts to argue that Netlist is precluded from responding to its new arguments

---

[3] Montage does not dispute that the service of subpoenas on Montage CA is appropriate.

about service because submitting the signed proof of service would be "new evidence." Opp. at 8, n. 6. But the signed proof of service is not "new evidence" as contemplated in *World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of New York, Inc*, 2011 WL 5118525, at *6, n.3 (N.D. Cal. Oct. 28, 2011). Netlist is not raising a new "issue" or argument by providing proof of service, but rather, providing evidence "properly limited to responding to [Montage's] arguments in its opposition." *See In re PersonalWeb Techs., LLC*, 2019 WL 1975432, at *1 (N.D. Cal. Feb. 6, 2019). The fact that Netlist served Montage on October 5 is also not "new." Netlist stated that it served Montage Shanghai via its subsidiary on October 5 in its opening brief, provided the subpoenas as exhibits, and proffered evidence that Montage received the subpoenas. Dkt. 1 at 6; Dkt. 1-11, 1-12.[4]

## B.     Montage's Arguments Regarding Rule 4 Are Inconsistent with This District's Case Law

Montage's argument that Rule 4 does not apply to Rule 45 subpoenas ignores the case law of this District. As explained in Netlist's opening brief, the Northern District of California has provided that courts may "rely on Rule 4 to fill in the gaps with respect to the adequacy of service of [a] Subpoena under Rule 45." *City of Roseville*, 2021 WL 1176641, at *13. Specifically, the court in *City of Roseville* declined to follow the decision from *Viasat, Inc. v. Space Sys./Loral, LLC*, 2014 WL 12577593, at *5 (S.D. Cal. June 30, 2014) relied on by Montage, and ultimately concluded that:

> [W]hile there may be specific situations where the requirements of Rule 45 and Rule 4 diverge with respect to service, it is permissible to look to Rule 4 to fill in gaps where those divergences are not implicated, as many courts have done.

*City of Roseville*, 2021 WL 1176641 at *5, n.5.[5]

---

[4] Even if the proof of service was considered "new evidence," the local rules specifically contemplate new evidence submitted in a reply brief and provide that "[i]f new evidence has been submitted in the reply, the opposing party may file and serve an Objection to Reply Evidence." L.R. 7-3(c)-(d). This rule negates any concern that Montage will be denied the opportunity to respond to this evidence. *See In re PersonalWeb*, 2019 WL 1975432 at *1 ("When a party raises a new argument or presents new evidence in a reply brief, a court may consider these matters only if the adverse party is given an opportunity to respond") (internal quotations omitted).

[5] *City of Roseville* rejected the position in unpublished decisions from other districts relied on by Montage. *SiteLock, LLC v. GoDaddy.com, LLC*, 338 F.R.D. 146, 153 (D. Or. 2021).

Courts in the Ninth Circuit and across the country have followed this same approach. *E.g.*
*Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, 2018 WL 2387580, at *3 (S.D. Cal. May 24,
2018) ("[t]here appears to be a growing trend [] among courts to allow substitute service of a Rule
45 subpoena []so long as the method of service is reasonably calculated to provide timely, fair notice
and an opportunity to object or file a motion to quash"); *Paisley Park Enters., Inc. v. Boxill*, 2019
WL 1036059, at *3 (D. Minn. Mar. 5, 2019) ("Rule 45 also does not specify what constitutes
personal service on a corporation," and "Courts often rely on the service requirements of [FRCP] 4
to fill this gap"); *MGA Ent., Inc. v. Nat'l Prods., Ltd.*, 2011 WL 13130709, at *2 (C.D. Cal. Dec.
20, 2011) (same); *In re Subpoena to Dunhuang Grp.*, 2019 WL 2150947, at *5 (E.D. Mich. May 17,
2019) ("service [of a subpoena] on a foreign entity is proper in a manner prescribed by Rule 4(f)");

Notably, cases cited by Montage only note that there are distinctions between Rule 4 and
Rule 45, but they do not preclude the court from using Rule 4 to fill gaps in Rule 45 where those
distinctions are not implicated. *F.T.C. v. Compagnie De Saint-Gobain-Pontà-Mousson*, 636 F.2d
1300, 1311 (D.C. Cir. 1980) (discussing how service **by mail** to a foreign citizen **on foreign soil**
was not permitted because the "distinction between service of notice and service of compulsory
process is a crucial one"); *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2015 WL 12778353, at
*2 (C.D. Cal. Oct. 22, 2015) (finding service on an individual *in a foreign country* was ineffective
because Rule 4 explicitly excludes this form). Montage's reliance on *Fujikura Ltd. v. Finisar Corp.*
is also inapposite because that case was decided before *City of Roseville*, and *Fujikura* found
"service by mail" rather than "personal delivery" of a subpoena was not appropriate. 2015 WL
5782351, at *5-*8 (N.D. Cal. Oct. 5, 2015).

Unlike these cases, Netlist personally delivered the subpoenas on the general manager of
Montage Shanghai located in California. Thus, the distinction that Rule 4 does not require personal
service while Rule 45 does is not implicated here. Indeed, the "minority position" referred to in
Wright & Miller's treatise is that personal service of a Rule 45 subpoena "is [not] required and
alternatively… service of a subpoena under Rule 45 [is] proper absent **personal service**." 9A Wright
& Miller § 2454 (3d ed. April 2022 update) (emphasis added). By contrast, the position adopted in
*City of Roseville* is that Rule 4 may be used to fill gaps as to "**what constitutes personal service on**

*a corporation*," which is not provided by Rule 45. *City of Roseville*, 2021 WL 1176641 at *3 (emphasis added). *City of Roseville* in fact specifically distinguished the case from those where the court declined to find that Rule 45 did not require personal service. *Id.* at *14 ("[i]n contrast to the cases discussed above, the Subpoena at issue in this case was not served by alternative means"). As explained above, *supra* III.A, Netlist personally served the subpoena on Montage CA. Under CA law, this is sufficient to serve Montage because Montage CA is a "general manager" for Montage.

Montage's failure to distinguish, or even address, *City of Roseville* is telling. Montage does not offer any argument that Montage CA does not act as a general manager for Montage under California law, effectively conceding that if this court follows the persuasive authority from its own district, it should find that service on Montage via its California subsidiary was proper. Additionally, the Jin Declaration (Dkt. No. 18-2) ("Jin Decl."), submitted with the Opposition, confirms Netlist's argument that Montage serves as a liaison between U.S. customers and Montage: "To perform its U.S. role, Montage CA needs to be able to help customers understand the functionality of Montage products." Jin Decl., ¶6.

### C. Netlist Seeks Compliance Within 100 Miles of Montage CA's Office, Where Montage Regularly Conducts Business

Montage next argues that Netlist's subpoena on Montage Shanghai is facially defective because the purported place of compliance is beyond the 100-miles geographical limit. Opp. at 17-18. Montage effectively takes the position that courts can almost never enforce subpoenas on corporations headquartered in foreign countries. This is not the case. California district courts have enforced subpoenas on foreign entities requiring compliance in the United States before, as have other federal courts. *See City of Roseville*, 2021 WL1176641, at *10 & *id.* Dkt. 141-11 (compelling compliance with the subpoena which required a Taiwan based company served through its U.S. based subsidiary, to produce documents in San Francisco); *Wultz v. Bank of China*, 298 F.R.D. 91, 96 (S.D.N.Y. 2014) (non-party Israeli bank compelled to provide deposition testimony in a New York lawsuit by videoconference from Israel). Further, as explained in Netlist's opening brief, Montage's argument regarding Rule 45(c) lacks merit in this context because Netlist's subpoena requires Montage to produce documents and attend depositions within 100 miles of Montage CA's office.

Montage conducts business through its arrangement with Montage CA in California.

The cases cited by Montage are distinguishable, as they do not address the issue of service of subpoena through a general manager of a foreign entity where compliance is requested within 100 miles from where the general manager has a physical presence. *Cf. Uniloc USA, Inc. v. Apple Inc.*, 2020 WL 6262349 (N.D. Cal. Oct. 23, 2020) (denying Apple's motion to compel document production in California because the subpoenaed entity was located in Kirkland, Washington and there was no service of subpoena on any general manager); *Dhillon v. Does 1-10*, 2013 WL 12144121 (N.D. Cal. July 21, 2013) (denying plaintiff's motion to compel subpoena for document production in San Francisco where the plaintiff served the subpoena at the third party's Los Angeles address and there was no service of subpoena on any general manager). By contrast, here, Netlist filed this motion in this District, and seeks compliance in this District less than 100 miles from where Montage regularly conducts business through its general manager.

## IV.      THIS COURT HAS PERSONAL JURISDICTION OVER MONTAGE

### A.      This Court Has Personal Jurisdiction over Netlist's Enforcement Action for Subpoenas Served on Montage Shanghai through Its General Manager

This Court should also reject Montage's argument that this Court does not have personal jurisdiction to enforce the subpoena. If service is proper, the court sitting in the district where compliance is required has jurisdiction over the parties for issues related to the subpoena. Rule 45(c) specifies that "[a] subpoena may command a person to attend a trial, hearing, or deposition within 100 miles of where the person resides, is employed, or regularly transacts business in person." This Court's jurisdiction over the parties in this action arises from its proximity to the place of compliance. *Cf. Montgomery v. Risen*, 2015 WL 12672825 (S.D. Cal. Nov. 5, 2015) (dismissing motion to compel subpoena for lack of personal jurisdiction because the "place of compliance is… a city outside of this district. Therefore, there is no authority for this Court's jurisdiction.").

Montage argues that Netlist relies on "imprecise language," but there are cases in this circuit explaining specifically "[j]urisdictional analysis is inappropriate for analyzing Rule 45 because it responds to an entirely different set of concerns." *Regents of Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 464 (S.D. Cal. 1996). As explained in *Kohne*, the specific or general jurisdiction analysis is

driven by "concerns both as [to] the reasonable limits of the power of the state, and as to the requirement that a party be at least fairly on notice that its conduct would subject it to that state's laws." *Id.* By contrast, "[i]n considering when a non-party witness may be commanded by subpoena to appear, however, the court does not consider the forum state's power or the notice to the witness, but only the burden to the witness of being required to physically appear." *Id.* "This is the only concern of Rule 45(c)." *Id.* As another example, in *Wultz*, 298 F.R.D. 91, a non-party Israeli bank was compelled to provide deposition testimony in a New York lawsuit by videoconference from Israel. The bank was "subject to this Court's ***subpoena jurisdiction*** by virtue of having a branch office in New York" (emphasis added) where it conducted business. *Id.* at 98. Montage specifically stated in its Annual Report that Montage CA was its California branch. *See,* Dkt. 1-28; *see also* Opp. at 16 ("the supposed 'branch' office is that of the subsidiary, Montage CA"). Thus, Montage is subject to this Court's subpoena jurisdiction.

Montage's citation to *Halo* is misplaced. In *Halo*, the defendant moved to dismiss the entire case based on the plaintiff's insufficient service of process and lack of personal jurisdiction—as opposed to a subpoena enforcement action. *Halo Elecs. Inc.v. Bel Fuse Inc.*, 2010 WL 2605195, at *4 (N.D. Cal. June 28, 2010). *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797 (9th Cir. 2004) offers Montage no better help either because this case is also about a motion to dismiss a plaintiff's claims for lack of personal jurisdiction and the Ninth Circuit applied the minimum contact test to a traditional tort action. *Id.* Neither *Halo* nor *Schwarzenegger* addressed the question of whether this Court has personal jurisdiction to enforce a subpoena that is properly served on a third-party through its general manager located in the same district where the Court is located.

### B. Montage Does Not Address Its Contacts with Montage CA

In the event this Court finds a separate personal jurisdiction analysis is required, specific jurisdiction exists because this action arises out of Montage's contacts with the forum state, namely, its contacts with California related to the documents and information about the operation of Montage components supplied to Samsung. Montage argues that this action does not arise out of its contacts with California because the subpoenas are related to an underlying dispute in Texas. Opp. at 17. This argument fails because this court is not adjudicating the underlying patent infringement dispute

1   in Texas, but rather, the enforcement of subpoenas in California. Indeed, if a non-party had to be

2   directly involved in the underlying dispute to be subject to specific jurisdiction, subpoenas would

3   rarely be enforced. Thus, the question on specific jurisdiction—if applicable—is whether Montage

4   Shanghai has contacts with the forum state related to the subject matter requested in Netlist's

5   subpoenas. As Netlist explained in its motion, they do. *See generally* Dkt. 1 at 12-13.

6        Specifically, Montage Shanghai claimed to have a branch in California for sales of Montage

7   Shanghai's products in the United States and to provide support for its U.S. customers. Dkt. 1-35 at

8   1 ("Montage [CA] is to some extent involved with certain support functions relating to the Montage

9   DDR components that are provided to Samsung, *i.e.*, the products at issue in the underlying

10  litigation"); Dkt. 1-22 (███████████████████████████████████████████████████

11  ███████████████████████████). Montage Shanghai regularly transfers documents to

12  California in order to facilitate this product support. Dkt. 3-5; Dkt. 1-32. Indeed, Montage admitted

13  that it had possession and produced certain documents it received from the Shanghai entity, but that

14  record is just simply incomplete. Dkt. 1-22 (███████████████████████████████████

15  ███████████████████████████). Thus, Montage Shanghai's contacts with California

16  are sufficient to support this Court's personal jurisdiction. Montage also does not present an

17  argument that it would be unreasonable for this court to exercise jurisdiction. Opp. at 10-17.

18       *Pokemon Co. Int'l, Inc. v. Shopify, Inc.*, 2017 WL 697520 (N.D. Cal. Feb. 22, 2017) is

19  distinguishable because there, Pokemon sought information about the relationship between Shopify

20  and a Missouri third party, Tee Turtle. The plaintiff could not show that Shopify's (or its

21  subsidiary's) contacts with California beared any relevance to the requested information. *Id.* By

22  contrast, Montage Shanghai regularly conducts business in California: it set up the California

23  branch/subsidiary for sales of the memory components, has employees working at the California

24  "branch," and sends documents to California relating to the operation of these memory components.

25  Dkt. 1 at 13. Montage's California contacts are all related to the subject matter of Netlist's

26  subpoenas—i.e. how the Montage memory components, including those sold to Samsung, operate.

27  **V.      MONTAGE'S SANCTIONS REQUEST IS INAPPROPRIATE**

28       "[A]bsent undue burden imposed by an oppressive subpoena, a facially defective subpoena,

or bad faith on the part of the requesting party, Rule 45(c)(1) sanctions are inappropriate." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012). Sanctions are not appropriate here because Netlist has made a good-faith effort to tailor its information requests to the immediate needs of the case and avoid burdening Montage as much as possible. *See supra* I. The Ninth Circuit has stated that courts should "not read 'undue burden' differently just because a non-party was subpoenaed." *Mount Hope*, 705 F.3d at 429. Additionally, Netlist's subpoena is not facially invalid, particularly in light of the recent precedent of this District. *City of Roseville*, 2021 WL 1176641; *see also Supra* II. Thus, even if this court rules against Netlist's Motion to Compel, it should not award attorney's fees merely because Montage had to litigate this motion. *See Mount Hope*, 705 F.3d at 429 ("Sanctions for issuing a subpoena are in no way supported merely because a party advocated a position in seeking discovery that lost in the end.").

The two cases Montage cited to support its request for sanctions are inapplicable here. In *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, the court noted that the subpoena issuing party failed to "consider[] additional limitations to the breadth of the document requests based on these objections and invitations to negotiate. Instead, [the issuing party] rejected reasonable attempts to compromise, as discussed above, and ended the negotiations with respect to the scope of the document requests by stating that further efforts to meet and confer 'would be fruitless.'" 2012 WL 629225, at *8 (N.D. Cal. Feb. 27, 2012). Unlike *NCAA Student*, here Netlist made repeated efforts to reach a compromise with Montage, including by limiting its subpoenas to a 5-hour deposition as to specific questions listed in Netlist's Exhibit No. 24. *See supra* I.B. And in *LegalZoom.com v. Rocket Law. Inc.*, the court found that the plaintiff "has not met its burden of establishing that it took 'reasonable steps' to avoid imposing an undue burden on non-party." 2015 WL 12832823, at *2 (N.D. Cal. Mar. 23, 2015). Even there, the court did not impose sanctions, but asked the subpoenaed entity to provide further briefing on that issue. *Id.* at *3. Montage falls far short from showing that Netlist's conduct is sanctionable. *See Fujikura*, 2015 WL 5782351, at *8 (denying requests for sanction).

## VI.    CONCLUSION

Netlist respectfully requests that its motion to compel subpoena be granted.

1  Dated:   January 17, 2023                    Respectfully submitted,

2                                               IRELL & MANELLA LLP

3                                               By: */s/  Yanan Zhao*
                                                    Jason G. Sheasby
4                                                   jsheasby@irell.com
                                                    Hong (Annita) Zhong
5                                                   hzhong@irell.com
6                                                   IRELL & MANELLA LLP
                                                    1800 Avenue of the Stars, Suite 900
7                                                   Los Angeles, California 90067
                                                    Telephone: (310) 277-1010
8                                                   Facsimile: (310) 203-7199

9                                               *Attorneys for Plaintiff Netlist, Inc.*

10

11                              **CERTIFICATE OF SERVICE**

12          I hereby certify that, on January 17, 2023, a copy of the foregoing was served to all

13  counsel of record.

14                                                   */s/ Yanan Zhao*
                                                     Yanan Zhao
15

16

17

18

19

20

21

22

23

24

25

26

27

28