UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MONTAGE TECHNOLOGY, INC., et al.,<br><br>　　　　　Defendants. | Case No. 22-mc-80337-VKD<br><br>**ORDER DENYING NETLIST'S MOTION TO COMPEL COMPLIANCE WITH DEPOSITION SUBPOENAS**<br><br>Re: Dkt. No. 1 |

Netlist, Inc. ("Netlist") moves to compel Montage Technology Co., Ltd.'s ("Montage Shanghai") and Montage Technology, Inc.'s ("Montage CA") (collectively, "Montage") compliance with subpoenas for deposition testimony for use in a patent infringement action.[1]  Dkt. No. 1.  Montage opposes the motion.  Dkt. No. 18.  The Court held a hearing on the motion on January 31, 2023.  Dkt. No. 26.

For the reasons explained below, the Court denies Netlist's motion to compel Montage Shanghai and Montage CA to comply with the deposition subpoenas.

**I.   BACKGROUND**

Netlist is the plaintiff in a patent infringement action against Samsung Electronics Co., Ltd. and two of its affiliates (collectively, "Samsung") in the United States District Court for the Eastern District of Texas, *Netlist, Inc. v. Samsung Electronics Co., Ltd. et al.*, No. 2:21-cv-00463-JRG (E.D. Tex.) (the "Texas action").  Montage Shanghai is a Chinese company located in China.

---

[1] At the hearing on this motion, Netlist confirmed that it moves to compel compliance with specific questions within the scope of its deposition subpoena to Montage Shanghai and Montage CA.

Dkt. No. 18 at 8. Montage CA, located in San Jose, California, is a subsidiary of Montage Shanghai. *Id.* According to Netlist, Montage Shanghai and Montage CA supply "key components" of the Samsung products Netlist accuses of infringement in the Texas action. Dkt. No. 1 at 1.

In the summer of 2022, Netlist served a document subpoena and a deposition subpoena on Montage CA. Dkt. No. 1 at 4. In response, Montage CA produced certain datasheets concerning the components at issue, but advised Netlist that it did not have any other responsive documents or information. *Id.* at 5-6.

On October 5, 2022, Netlist attempted to serve a document subpoena and a deposition subpoena on Montage Shanghai. *Id.* at 6; Dkt. Nos. 1-11, 1-12. Although the United States and China are signatories to the Hague Service Convention,[2] which provides a means of effecting service of process abroad, Netlist did not use the procedures available under the Convention to serve Montage Shanghai in China. Instead, Netlist delivered the subpoenas to Montage Shanghai's subsidiary, Montage CA. Dkt. No. 1 at 6. Montage Shanghai objected that such service was improper and ineffective, and refused to comply with the subpoenas. *See* Dkt. No. 1-23.

Netlist now moves to compel Montage CA and/or Montage Shanghai to provide a witness prepared to testify regarding the specific topics described in Exhibit 24 to Ms. Hong's declaration in support of the motion to compel, which Netlist says are within the scope of Topics 3, 4, 9, and 16 of its deposition subpoenas. Dkt. No. 1 at 8; Dkt. No. 1-26; Dkt. No. 23 at 2. Those topics encompass the following subject matter:

> 3. The structure, function, and operation of Montage Data Buffer as related to DDR4 LRDIMM Write Buffer Timing Control Features and DDR4 LRDIMM Read Buffer Timing Control Features.
>
> 4. The structure, function, and operation of Montage RCD as related to the address and command signals it receives and outputs and how the output signals are generated based on the signals it

---

[2] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638.

> receives.
>
> 9. Competitive advantages of Montage DDR Components, including features that distinguishes[sic] Montage DDR Components from those of its competitors.
>
> 16. The compliance and/or noncompliance of Montage DDR Components with JEDEC standards, and any deviations as related to the Subpoena Features.[3]

Dkt. No. 1-11; Dkt. No. 1-26. Montage Shanghai and Montage CA oppose the motion. Dkt. No. 18.

## II. DISCUSSION

Although Netlist suggests that Montage CA may have more responsive information than it claims to have, the crux of Netlist's motion is the argument that Montage Shanghai should be compelled to provide a witness or witnesses to provide deposition testimony. *See* Dkt. No. 1 at 9; Dkt. No. 23 at 8-14. Indeed, Montage CA asserts that it has already produced all responsive documents in its possession, custody, or control and that it does not have the additional information Netlist requests. Dkt. No. 18 at 18. While Montage questions whether the information Netlist demands is relevant to any claim or defense at issue in the Texas action, *see* Dkt. No. 18 at 6-7, the Court assumes for purposes of this order that the narrower scope of discovery Netlist now seeks is relevant.

The parties' dispute requires the Court to resolve three principal questions: (1) Was service of the Montage Shanghai subpoena proper? (2) Does the Court have personal jurisdiction over Montage Shanghai? (3) Does the subpoena comply with the geographic limitations of Rule 45?

### A. Service of Process on Montage Shanghai

Netlist contends that it properly served Montage Shanghai by delivering a deposition subpoena to Montage CA because Montage CA is a "general manager" for Montage Shanghai

---

[3] "Subpoena Features" is defined in the subpoena as "one or more of DDR4 LRDIMM Write Buffer Timing Control Features, DDR4 LRDIMM Read Buffer Timing Control Features and DDR5 Power Management Features." Each of those "Features" is separately defined in the subpoena.

3

1  under California law.  Dkt. No. 1 at 6; Dkt. No. 23 at 8.  Netlist also contends that, by virtue of

2  such service, this Court may exercise personal jurisdiction over Montage Shanghai for purposes of

3  compelling compliance with the subpoena.  Dkt. No. 1 at 9.[4]  Montage Shanghai disputes the

4  sufficiency of service.  Dkt. No. 18 at 8-10.

5        Rule 45 requires service of a subpoena by "delivering a copy to the named person."  Fed.

6  R. Civ. P. 45(b)(1).  The Ninth Circuit has not addressed whether all of the methods available for

7  service of a complaint and summons under Rule 4 are also proper means for service of a subpoena

8  under Rule 45, but most district courts agree that "delivering" requires personal service.  *See, e.g.,*

9  *City of Roseville Employees' Ret. Sys. v. Apple Inc.*, No. 19-cv-2033-YGR (JCS), 2021 WL

10  1176641, at *10 (N.D. Cal. Mar. 29, 2021) (collecting cases).  Netlist argues that personal service

11  of a subpoena upon a foreign corporation in the United States may be accomplished by any of the

12  methods specified for personal service under Rule 4, including any manner permitted by state law

13  in the state where service is made.  Dkt. No. 1 at 9 (citing Fed. R. Civ. 4(h)(1)(A); Fed. R. Civ. P.

14  4(e)(1)).  Montage contends that Rule 4 is "inapplicable" to service of subpoenas and appears to

15  suggest that service on the agent of a foreign corporation in the United States would not comply

16  with Rule 45.  *See* Dkt. No. 18 at 8-9 & n.7.  However, that position is inconsistent with the

17  authority on which Montage relies, which acknowledges that personal service on a corporation

18  may be accomplished by serving its agent.  *See SiteLock, LLC v. GoDaddy.com, LLC,* 338 F.R.D.

19  146, 154 (D. Or. 2021) ("[T]he alternative forms of service described in Rule 4, *other than*

20  *personal service on an agent of a corporation*, are insufficient service under Rule 45.") (emphasis

21  added); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*

22  § 2454 (3d ed. April 2022 update) ("Service on an agent of a corporation is sufficient, however,

23  even though the agent on whom service is made does not have control of the books and records

---

[4] In its opening motion, Netlist also argues that Montage CA is the alter ego of Montage Shanghai, but it appears to abandon this argument in its reply.  In any event, the Court is not persuaded that Netlist has shown that Montage CA is the alter ego of Montage Shanghai, as it has not established the requisite unity of interest or that failure to treat the two companies as separate corporate entities would result in fraud or injustice.  *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073-74 (9th Cir. 2015).

required to be produced, since it is not the agent who is to respond to the subpoena but the corporation, and the agent in that situation is merely the vehicle for reaching the corporation. A corporation is amenable to service of a subpoena under Rule 45(b) in any forum in which it has sufficient minimum contacts.") (footnotes omitted). The Court agrees with Netlist that it is appropriate to look to Rule 4 for guidance regarding what qualifies as personal service of a subpoena on a corporation. *See City of Roseville*, 2021 WL 1176641, at *14 (finding it "appropriate to look to Rule 4 to fill in gaps" with respect to personal service of subpoena on a corporation).

Citing Rule 4(e) and California law, Netlist argues a subpoena may be served on a foreign corporation by serving its domestic "general manager." Dkt. No. 1 at 9-10; Dkt. No. 23 at 8. The California Corporations Code provides, in relevant part, that "[d]elivery by hand of a copy of any process against a foreign corporation (a) to any officer of the corporation or its general manager in this state, . . . shall constitute valid service on the corporation." Cal. Corp. Code § 2110(a).[5] This provision applies only where "the foreign corporation is 'doing business in this State' within the meaning of the statute." *Cosper v. Smith & Wesson Arms Co.,* 53 Cal. 2d 77, 82 (1959) (interpreting predecessor statute to § 2110(a)).[6] This statute does not define "general manager," but California courts have construed the term to mean "an agent of the corporation of sufficient character and rank to make it reasonably certain that the corporate defendant will be apprised of the service made." *Id.* at 83; *see also Yamaha Motor Co. v. Superior Ct.*, 174 Cal. App. 4th 264, 273 (Ct. App. 2009). A "general manager" may be an individual or an entity. *See Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1227 (C.D. Cal. 2008) (collecting cases). Netlist says that Montage CA is Montage Shanghai's "general manager," and that it successfully served Montage Shanghai's general manager by personally serving the subpoena on Montage CA

---

[5] California Code of Civil Procedure § 416.10(b) also provides for service of process on a "general manager," but that provision governs service of a complaint and summons, and not service of process more generally.

[6] Corporations Code § 2110 effectively replaced § 6500. *See Yamaha Motor Co. v. Superior Ct.*, 174 Cal. App. 4th 264, 272 (Ct. App. 2009).

via that entity's agent for service of process.  Dkt. No. 23 at 8; Dkt. No. 23-3.

Montage Shanghai has no employees in California and owns no real property in California. *See* Dkt. No. 18 at 2.  However, the parties agree that Montage CA is a wholly owned subsidiary of Montage Shanghai, and that it handles sales, marketing, and customer support in the United States for products that are designed and developed by Montage Shanghai in China.  *See* Dkt. No. 1 at 7; Dkt. No. 18 at 2.  In addition, Montage Shanghai and Montage CA share some officers and directors:  Howard Yang is CEO of both Montage Shanghai and Montage CA; Stephen Tai is the President of Montage Shanghai and the CFO of Montage CA; and Mr. Yang and Mr. Tai are two of three directors on Montage CA's board of directors.  *See* Dkt. No. 1 at 6; Dkt. No. 18 at 2.  At the hearing on this motion, Montage conceded that Montage CA meets the literal definition of a "general manager" under the California Corporations Code as interpreted by California courts—i.e., "an agent of the corporation of sufficient character and rank to make it reasonably certain that the corporate defendant will be apprised of the service made"—for the purpose of service of process.  However, Montage disputes that Montage Shanghai is thereby subject to the personal jurisdiction of this Court.  It contends that this Court lacks personal jurisdiction over Montage Shanghai and service on Montage CA is therefore ineffective for purposes of enforcement of the subpoena.

The Court agrees with Montage that merely satisfying the statutory requirements for service on a foreign corporation does not dispose of the question of personal jurisdiction or any of the other requirements of Rule 45.  Specifically, the Court finds no support for Netlist's thesis that a "general manager" is necessarily more than an agent for service of process under California law, or that California's definition of "general manager" is coextensive with the requirements of federal due process or Rule 45.

**B.     Personal Jurisdiction over Montage Shanghai**

Mere notice to a non-party corporation is insufficient for purposes of compelling compliance with a subpoena.  *See Fujikura Ltd. v. Finisar Corp.,* No. 15-mc-80110-HRL (JSC), 2015 WL 5782351, at *7 (N.D. Cal. Oct. 5, 2015).  Rather, Netlist must establish that Montage Shanghai has sufficient minimum contacts with this district to satisfy federal due process

6

requirements in order for service to be effective under Rule 45. *See, e.g.*, *City of Roseville*, 2021 WL 1176641, at *10 ("If the non-party named in the subpoena is a corporation, the corporation is amenable to service in any forum within which the corporation has sufficient minimum contacts.").

The Ninth Circuit has not addressed the requirements for personal jurisdiction with respect to service of or compliance with a subpoena, although courts within this Circuit have generally assumed that principles applicable to general and specific jurisdiction over parties apply equally to jurisdiction over non-parties for purposes of discovery.[7] *See, e.g.*, *Pokemon Co. Int'l, Inc. v. Shopify, Inc.*, No. 16-mc-80272-KAW, 2017 WL 697520, at *2-*3 (N.D. Cal. Feb. 22, 2017); *Monolithic Power Sys., Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 20-cv-04616-SBA (JCS), 2021 WL 1788445, at *2 (N.D. Cal. May 5, 2021); *but see Regents of Univ. of California v. Kohne,* 166 F.R.D. 463, 464 (S.D. Cal. 1996) ("Jurisdictional analysis is inappropriate for analyzing Rule 45 because it responds to an entirely different set of concerns."). Here, Netlist does not contend that Montage Shanghai is subject to general jurisdiction in this district, but instead relies on principles of specific jurisdiction relating to Montage Shanghai's supply of "key components" to Samsung. *See* Dkt. No. 1 at 12-13; Dkt. No. 23 at 13-14.

In the Ninth Circuit, courts analyze specific jurisdiction for a non-resident defendant using a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and

---

[7] The Second Circuit appears to be the only federal appellate court to have considered application of due process principles to non-party subpoena for discovery. *See In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019). In that case, the court held: "[W]here the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery. That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all." *Id.* at 530.

7

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). In patent infringement actions, courts generally apply a "purposeful direction" analysis when considering whether a defendant is subject to specific jurisdiction in the forum. *See, e.g., Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 883 (N.D. Cal. 2011). However, in the context of non-party discovery, the choice between the "purposeful direction" or "purposeful availment" tests (or some other test) would seem to depend less on the nature of the underlying action than on the nature of the discovery sought. In any event, because the second prong of the specific jurisdiction test is dispositive here, the Court discusses that prong without first addressing the question of Montage Shanghai's "purposeful direction" or "purposeful availment" with respect to this district.

Netlist's subpoena seeks deposition testimony regarding details of the structure, function, and operation of the components Montage supplies to Samsung, the distinguishing features of those components, and any deviations of those components from the JEDEC standards. *See* Dkt. No. 1-11; Dkt. No. 1-26. With respect to this type of detailed technical information, Montage Shanghai relies on declaration testimony asserting, without contradiction, that:

> Montage Shanghai is solely responsible for the design and development of Montage products. Other than the data sheets, detailed documents regarding design and development, including source code, are exclusively located in China and are accessible only by Montage Shanghai. Access to source code is limited to specific employees of Montage Shanghai.
>
> To perform its role, Montage CA provides product documentation and product samples and assists customers in understanding the functionality of Montage products. But it does not need to know, and does not know, all the intricate details of *how* they function or the details regarding precisely *how* those functions are implemented in the silicon. Only Montage Shanghai has such detailed design information, which is considered proprietary even within Montage.

Dkt. No. 18 at 2-3 (citations omitted); Dkt. No. 18-1 (Zhou decl.); Dkt. No. 18-2 (Jin decl.). With respect to the supply of components to Samsung, Montage Shanghai asserts, again without contradiction, that "Montage Shanghai manages the relationship with Samsung, which is located

8

in Seoul, South Korea. Transactions with Samsung do *not* include U.S.-based Montage entities." Dkt. No. 18 (citations omitted); Dkt. No. 18-1 (Zhou decl.). On this record, the Court finds that the specific discovery Netlist seeks from Montage Shanghai does not arise out of or relate to Montage Shanghai's contacts with California. The contacts on which Netlist focuses—Montage Shanghai's use of Montage CA to sell products designed by Montage Shanghai in California and to provide support for U.S. customers of those products—are not related to the discovery it seeks. Netlist does not demand testimony from Montage Shanghai concerning sales and support services; it asks for deposition testimony about the technical details of the structure, function, and operation of Montage Shanghai's components. The design and development activities that cause Montage Shanghai to have knowledge of these matters did not occur in California; they occurred in China.

Accordingly, the Court concludes that because Montage Shanghai is not subject to the Court's jurisdiction for purposes of the discovery Netlist seeks by subpoena, service of the subpoena on Montage CA was ineffective under Rule 45.

### C.     Compliance with Geographic Limits of Rule 45

Where a subpoena commands a non-party to appear for deposition, the place set for the deposition must be within 100 miles of where "the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). A court must quash or modify a deposition subpoena if it requires a person to comply beyond the geographical limits specified in Rule 45(c). Fed. R. Civ. P. 45(d)(3)(ii). Montage argues that the subpoena to Montage Shanghai requires compliance in California at a place that is approximately 6,000 miles from where any corporate designate resides, is employed, or regularly transacts business in person. Dkt. No. 18 at 17.

Netlist's subpoena is directed to a corporate entity, Montage Shanghai, under Rule 30(b)(6). Dkt. No. 1-11 at 8 (para. 31). Rule 30(b)(6) requires the corporation to "designate one or more officers, directors, or managing agents, or . . . other persons who consent to testify on its behalf" about information known ore reasonably available to the corporation within the scope of topics described in the deposition subpoena. Fed. R. Civ. P. 30(b)(6). The subpoena specifies a place of compliance in San Francisco, California. Dkt. No. 1-11. Netlist explains that this place is

within 100 miles of Montage CA, where it contends Montage Shanghai "conducts business through its arrangement with Montage CA." Dkt. No. 23 at 12.

Montage Shanghai contends that it has no employee or other representative with knowledge of the subject matter described in Netlist's subpoena who is within 100 miles of this district. Netlist does not dispute this contention, but relies solely on the relationship between Montage Shanghai and Montage CA, insisting that by virtue of this relationship Montage Shanghai has the obligation to provide the deposition testimony demanded in the place set for compliance. In the alternative, at the hearing on its motion, Netlist suggested that Montage Shanghai could submit to a remote deposition in China, have a representative travel to California, or educate a witness already located in California.

Other courts that have considered similar circumstances have found a subpoena does not comply with the geographic limits of Rule 45(c) where the only knowledgeable representatives would have to travel more than 100 miles to provide testimony. For example, in *Hermitage Global Partners LP v. Prevezon Holdings Ltd.*, the district court quashed a subpoena to a Delaware company which would have required it to produce a corporate designee to testify in the District of Columbia, where the Delaware company had no employees within 100 miles of that location. Citing "the weight of authority," the court concluded that "the plain language of Rule 45(c) indicates that the court cannot compel a witness—as an individual or as a corporate representative—to travel more than 100 miles from a place of residence, employment, or regular business to testify at a deposition." *Hermitage Glob. Partners LP v. Prevezon Holdings Ltd.*, No. 13-CV-6326 TPG, 2015 WL 728463, at *4 (S.D.N.Y. Feb. 19, 2015) (collecting cases). Similarly, in *Price Waterhouse LLP v. First American Corp.*, the district court concluded that although it had personal jurisdiction over a non-party company based in the United Kingdom, it could not compel the company's corporate designee to sit for deposition in New York because there was no employee with knowledge within 100 miles of New York. *Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 64 (S.D.N.Y. 1998).

The Court may not modify Netlist's subpoena to require Montage Shanghai to provide deposition testimony in China, as it lacks authority to compel a deposition outside this district.

10

*See Est. of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 240 (D.D.C. 2013). The Court also may not require Montage Shanghai to bring a representative to California, or to select and educate a Montage CA employee to serve as a conduit of information known only to Montage Shanghai. *See id.* at 239; *Price Waterhouse LLP*, 182 F.R.D. at 63 ("[A]llowing a subpoena served pursuant to Rule 30(b)(6) to evade the proscriptions of Rule 45(c) would render Rule 45 surplusage and subject nonparties to the same level of burdensome discovery that can be imposed upon a party . . . .").

For these reasons, the Court concludes that Netlist's deposition subpoena to Montage Shanghai does not comply with the geographic limit of Rule 45(c).

## III. CONCLUSION

The Court denies Netlist's motion to compel compliance with the deposition subpoenas to Montage Shanghai and Montage CA.

**IT IS SO ORDERED.**

Dated: February 24, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge